JOSEPH SALAMA, State Bar No. 212225
LAW OFFICES OF JOSEPH SALAMA
165 N. Redwood Drive, Suite 285
San Rafael, CA 94903
Telephone: (415) 948-9030
Facsimile: (415) 479-1340

Attorneys for Petitioners
WINNEMUCCA SHOSHONI, MBS; AMERICAN STATES UNIVERSITY; CANNABIS SCIENCE, INC.; FREE SPIRIT ORGANICS; and HRM FARMS

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINNEMUCCA SHOSHONI, MBS; AMERICAN STATES UNIVERSITY; CANNABIS SCIENCE, INC.; FREE SPIRIT ORGANICS; and HRM FARMS;<br><br>Plaintiffs,<br><br>v.<br><br>SAN JOAQUIN COUNTY BOARD OF SUPERVISORS; SAN JOAQUIN COUNTY COUNSEL; ERIN HIROKO SAKATA; MIGUEL VILLAPUDUA; KATHERINE MILLER; TOM PATTI; BOB ELLIOTT; CHUCK WINN; SAN JOAQUIN COUNTY DISTRICT ATTORNEY; SAN JOAQUIN COUNTY SHERIFF; DRUG ENFORCEMENT ADMINISTRATION; DOES 1-50, INCLUSIVE,<br><br>Defendants | Case No. 2:17-CV-02271-KJM-EFB<br><br>MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION |

On September 26, 2017, San Joaquin County Board of Supervisors ["Board"], apparently acting on recommendations of San Joaquin County Counsel, the Sheriff, and the Agricultural Commissioner, enacted Ordinance No. 4497 entitled "An Interim Urgency Ordinance Declaring a Temporary Moratorium on the Cultivation of Industrial Hemp by 'Established Agricultural Research Institutions' Within the Unincorporated Areas of San Joaquin County ["offending ordinance"].[1]  The offending ordinance: is preempted by both the 2014 U.S. Farm Bill and California Food & Agriculture Code sections 81000 et seq.; was specifically targeted at, and enacted with the clear intention that it criminalize, plaintiffs and their existing hemp grow ["subject grow"]; was enacted on an "emergency" basis so as to deprive plaintiffs of notice; and was written in such a manner as to render it confusing to persons of ordinary intelligence.

The Board members never bothered to visit the grow, read the Food and Agriculture Code themselves, or verify any of over ten false statements of law and/or fact made to them.  Nor did they bother to wait until hearing what plaintiffs had to say before effectively re-writing the law, acting as all three branches of government, and summarily punishing plaintiffs without any process.  Moreover, the Board is on record as having explicitly considered the legality of their actions and then acting anyway, in clear disregard for plaintiffs' Constitutional rights. The transcript of the Board's September 26, 2017 meeting reads like a bar examination question, replete with both major issues as well as minor issues.

On October 10, 2017, a mere two business days after "assuring" plaintiffs due process, defendants entered onto the tribal fee land owned by a Native American, leased by the Winnemucca tribe for the subject grow, and seized $77M worth of industrial hemp. This seizure was conducted pursuant to a highly questionable warrant and in violation of the parameters on the face of the warrant itself.

---

[1] As this Court is likely aware, "cannabis" is the genus of the plant *cannabis sativa l.* which includes both marijuana, and hemp. They are legally distinguished, both in federal and California law, by the concentration of the *tetrahydrocannabinol* cannabinoid (THC), with industrial hemp defined as having no more than 0.3% THC, rendering hemp non-psychoactive. There are over 100 different cannabinoids, including THC, CBD, THVC, and CBDV, among others, naturally present in different amounts in the *cannabis sativa l.* plant, subject to breeding various strains to accentuate or minimize the genetic expression of specific cannabinoids in the plant grown.

Industrial hemp presently carries a shockingly high retail value because of the exorbitant demand for the *cannabidiol* cannabinoid ["CBD"].  Imports of CBD have essentially ceased and, under federal law, CBD cannot be legally extracted from marijuana, only industrial hemp.  Concurrently CBD is becoming known as a panacea.  It is an antiemetic, anticonvulsant, antipsychotic, anti-inflammatory, antioxidant, anti-carcinogenic, anti-anxiolytic, and anti-depressant,[2] with domestic CBD patient demand vastly exceeding THC.

Plaintiffs come before this Honorable Court on behalf of themselves and on behalf of the 8,440 members of the various Native American tribes who receive the CBD that Chief William Bills of the Winnemucca Shoshoni distributes under the label Free Spirit Organics, including the 200 members who receive $110,000 worth of CBD at no cost at all, to treat everything from high cholesterol and insulin disregulation to arthritis and chronic post-trauma pain.  Each of these 8,440 persons has been affected by defendants' actions and will suffer the further injury of being completely without medicine for an indefinite period if defendants are not enjoined from interfering with plaintiffs' grow moving forward.  Every family within the Winnemucca Shoshoni is affected, and with the shortage, it is speculative whether they will be able to find it elsewhere, let alone afford it.  The 200 Native Americans who were getting it at no charge will be forced go back to living in pain, with many of them unable to work to earn a living as a result.

Furthermore, the loss of opportunity to finish much needed research about the c*annabis sativa l.* plant within the short (four-year) time frame allowed for hemp pilot programs is also irreparable.  Several experiments were interrupted with the seizure and will have to start from scratch.  From an academic perspective, many of the members of plaintiffs "team" were on the verge of nationwide professional recognition in connection with the success of the subject grow, and if the relief requested is denied, less time will left to restore their work and see it through.  This is made more serious by the short supply of seeds with which to do it.

---

[2] *Cannabidiol for neurodegenerative disorders: important new clinical applications for this phyto-cannabinoid?* Fernández Ruiz J. et al., Br. J. Clin. Pharmacol. 2013, Feb; 75(2) at 323-33.

There is irreparable economic harm from the disruption of the supply chain of this scarce product in commerce including: loss in reputation associated with breaking contracts for production, shipment, and distribution; the loss of key strategic foundational industry opportunities and partnerships in the formative stages of the proliferation of CBD which will otherwise go to competitors; and finally, importantly, the loss of employment for many individual Native American workers who had been specially trained to process the subject grow, and the loss of their competitive career path advancement opportunity in this burgeoning new industry is also irreparable. Each of these injuries will worsen if the requested relief is denied.

## FACTUAL BACKGROUND

Title 7 of the United States Code, section 5940 authorizes hemp to be grown in connection with research to study the growth, cultivation, or marketing of industrial hemp if the growing or cultivating of industrial hemp is allowed under the laws of the State in which such institution of higher education is located.

In 2016, section 81000 of the California Food and Agriculture Code was amended to allow hemp to be grown by an "established agricultural research institution" means either: (1) a public or private institution or organization that maintains land or facilities for agricultural research, including colleges, universities, agricultural research centers, and conservation research centers; or (2) an institution of higher education that grows, cultivates or manufactures industrial hemp for purposes of research conducted under an agricultural pilot program or other agricultural or academic research.

The California Industrial Hemp Farming Act designates Imperial, Kern, Kings, and San Joaquin Counties as pilot program counties for growing hemp by established agricultural research institutions.

The California Department of Food and Agriculture ["CDFA"] has declared that an "established agricultural research institution," as defined in Food and Agricultural Code section 81000, is exempt from registration and may currently grow industrial hemp in California.

Pursuant to Food and Agricultural Code section 81001, in March 2017 the Hemp Advisory Board was created to advise the CDFA and make recommendations on hemp law.

On March 21, 2016 the Nevada Department of Agriculture approved Free Spirit Organics as an industrial hemp cultivar. A Declaration of Certification of Industrial Hemp Production pursuant to that approval was issued on June 20, 2016.

On August 29, 2017, County Counsel sent plaintiffs a letter indicating that San Joaquin County called into question their status as an established agricultural research institution.

On September 11, 2017, plaintiffs replied with a seventeen-page letter providing counsel with information to demonstrate that plaintiffs were an established agricultural research institution.

On September 12, 2017, County Counsel sent a letter stating that the County disagreed, threatening legal action.

On September 15, 2017, plaintiffs replied with twenty-two pages of information detailing its activities, research, and academic programs.

On September 16, 2017, a study entitled *Nanoparticle Drones to Target Lung Cancer with Radiosensitizers and Cannabinoids* was published in *Frontiers in Oncology* by Raymond Dabney, Co-Founder of plaintiff American States University ["ASU"], and CEO of plaintiff Cannabis Science, Inc. ["CSI"] and Allen Herman, M.D., Ph.D., Dean of ASU and Chief Medical Officer of CSI in collaboration with researchers at the Dana-Farber Cancer Institute.[3]

On September 26, 2017, defendants held a board meeting and enacted the offending ordinance criminalizing plaintiffs' grow and <u>banning all hemp grows by established agricultural research institutions</u>. During that meeting, plaintiffs' grow was mentioned and discussed for over 37 minutes of the 65 minutes allocated to the ordinance. <u>Defendants specifically tailored the ordinance to plaintiffs' grow and elected to not changed the proposed language specifically because doing so would afford plaintiffs' notice of the ordinance</u>. Decl. Bills, 7:11.

---

[3] Available at http://bit.ly/hempstudy

On October 5, 2017, plaintiffs requested an opportunity to be heard and were told to attend the November 7, 2017 Board meeting.

On October 10, 2017, defendants entered onto plaintiffs' land and took their hemp, offering a warrant, and leaving a pre-written list of what was taken that had no relationship to what was really taken.

On November 7, 2017, plaintiffs pointed out the numerous factual errors of the prior meeting and defendants voted to extend the offending ordinance for another year and a half.

Counsel has duly served the First Amended Complaint and given notice of this Motion.

A. PLAINTIFFS WILL SUCCEED ON THE MERITS

1. The Offending Ordinance Is Preempted

Obstacle preemption arises when a challenged ordinance stands as an obstacle to the accomplishment and execution of the full purposes and objectives of a higher law. *Crosby v. National Foreign Trade Council* 530 U.S. 363 (2000).  The offending ordinance denies plaintiffs the ability to continue to cultivate industrial hemp plants in violation of the Agricultural Act of 2014 ["Farm Bill"] signed into law by former President Barack Obama, specifically permitting such cultivars (7 U.S.C. §5940(a)) and the corresponding California Industrial Hemp Farming Act signed into law by Governor Jerry Brown in 2013.

Moreover, the California AUMA specifically authorizes hemp cultivation and does not provide for cities or counties, or municipalities to enact laws to regulate hemp cultivation.  By contrast, the section of AUMA dealing with marijuana specifically states that "[a] city, county, or city and county may enact and enforce reasonable regulations to regulate the actions and conduct in paragraph (3) of subdivision (a) of Section 11362.1." Health and Safety Code §11362.2. This demonstrates clear intention for there to not be any right for the city or county to enforce reasonable regulations with respect to hemp.  Furthermore the complete ban on industrial hemp directly contradicts the stated goals for the California Industrial Hemp Act to allow hemp growth in Imperial, Kern, Kings, and San Joaquin Counties, and the offending ordinance is therefore in

violation of and preempted by California law because the objective of the California law - to permit hemp research and cultivation in San Joaquin County - is being directly prohibited.

### 2. The Offending Ordinance Is A Bill Of Attainder

The United States Constitution prohibits "[L]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution." *United States v. Lovett* 328 U.S. 303, 315-6 (1946); *accord, Estate of Castiglioni* 40 Cal.App.4th 367, 377, fn. 17 (1995); *California State Employees Assn. v. Flournoy* 32 Cal.App.3d 219, 225 (1973).

The subject ordinance was <u>specifically tailored to the subject grow</u>, targeting plaintiffs with deliberate intention during no fewer than 35 minutes during the meeting. The ordinance was specifically written to encompass plaintiffs' grow. Combined with the seizure of plaintiffs' hemp crops, it has the effect of punishing plaintiffs without any trial or *even a chance to speak.* For this reason it constitutes an unlawful bill of attainder.

### 3. The Offending Ordinance Is Unconstitutionally Vague

"[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975). "To be struck down for vagueness, a statute or regulation must fail to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *Donovan v. Royal Logging Co.,* 645 F.2d 822, 831 (9th Cir.1981; *internal citations omitted*). The offending ordinance states, in section J, states "...due to the fact that industrial hemp and cannabis are derivatives of the same plant, Cannabis sativa L., the appearance of industrial hemp and cannabis are indistinguishable." To the ordinary reader, this appears to make no sense, as it appears to be classifying the plants based on capitalization - with lowercase cannabis apparently meaning something different from Cannabis sativa L.  Subsequent to this, the ordinance says, also in section J, "Due to the fact that industrial hemp and cannabis are indistinguishable..." Because industrial hemp <u>is</u> cannabis, it is similarly confusing.

In as much as "cannabis" is being used to mean "marijuana", which might be the case for the majority of the ordinance, this disregards that the term "cannabis" encompasses hemp as well, and is defined as including hemp in section I.  It appears that the authors of this ordinance went back and forth between cannabis to mean marijuana and cannabis to mean the parent plant. Yet the average reader has no indication of which is meant and when.  A person "of ordinary intelligence" not being able to understand what is permitted and what it not, renders the ordinance unconstitutionally vague.

### 4. The Offending Ordinance Is An Ex Post Facto Law

"The Ex Post Facto Clause forbids the Congress to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed..." *Weaver v. Graham* 450 U.S. 24, 28 (1981).  To fall within the *ex post facto* prohibition, two critical elements must be present: first, the law "must be retrospective, that is, it must apply to events occurring before its enactment"; and second, "it must disadvantage the offender affected by it." *Id.* at 29.

The County, in the present case, may not have applied the law retroactively, but because it criminalized existing conduct and failed to afford plaintiffs any meaningful opportunity to transplant the crops or do anything remedial, it essentially punished them for their preexisting grow and was therefore unconstitutional.

### 5. Plaintiffs Were Denied Due Process

The Fifth Amendment guarantees that "No person shall...be deprived of life, liberty, or property, without due process of law." This is applied to the states by the Fourteenth Amendment.  The seminal case on point is *Yagman v. Garcetti*, 852 F.3d 859 (9th Cir. 2017) which held "[t]he base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 863 (*citations omitted*).

Defendants went out of their way to ensure that no process was available to plaintiffs: (1) they acted on alleged emergency basis, when there was no emergency, using that as a reason to

fail to notify anyone opposed to the offending ordinance before it was passed, including plaintiffs, whilst concurrently taking great care to inform those in favor of it to purposefully fabricate an apparent "good record" of public participation; (2) defendants informed plaintiffs of passage of the ordinance and demanded removal of crops and acted on that demand within far too short a window to reasonably permit compliance; (3) defendants appeared to agree to afford plaintiffs due process, and then betrayed that agreement by entering onto the subject grow and steal it beforehand; (4) the County acted as lawmaker, interpreter of the law, trier of fact, and punisher before any of plaintiffs was heard by the Board or any neutral factfinder.  Because defendants have effectively stolen $77M from plaintiffs without affording them due process, their actions were unconstitutional.

      6. <u>The Seizure Was Unconstitutional</u>

      In order for a search to be reasonable, a warrant must be specific. *United States v. Brock*, 667 F.2d 1311, 1322 (9th Cir. 1982).  Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought.  *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986).  Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.  *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982) ("Generic classifications in a warrant are acceptable only when a more precise description is not possible." (*quoting United States v. Bright,* 630 F.2d 804, 812 (5th Cir. 1980)).

      The search warrant at issue contained inaccurate facts sworn out by Agent Michael Eastin, and the signature of a-not-easily-identified Magistrate was taken, with no typed name underneath.  The warrant further does not identify what agency employs Eastin.  The warrant does not indicate Eastin's expertise, experience, familiarity with the subject matter of the warrant, or the basis on which he believed the property authorized to be searched for including "Marijuana/Hemp" was illegal. Throughout the warrant, the terms "marijuana" and "hemp" are only used in conjunction with each other, never individually, despite that they are measurably unique products with a wildly different legal implications.  The warrant prohibits night entry, yet

at the time the Sheriff entered onto the subject grow, it was so dark that lights had to be erected. The warrant does not indicate that any property may be seized. The warrant was never correctly returned and the exact amounts of what were taken have not been verified. Because the warrant failed to be specific and because the search as conducted exceeded the authority of the warrant itself, it is unconstitutional.

B. PLAINTIFFS WILL BE IRREPARABLY HARMED

Defendants' conduct implicates the some of the most fundamental and sacred portions of plaintiffs' constitutional rights which "unquestionably [constitute] irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (*plurality op.*); *Arizona v. United States,* 641 F.3d 339, 366 (9th Cir. 2011) (*rev'd in part on other grounds* 132 S.Ct. 2492 (2012).

C. THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR

There is no hardship to the County if the injunctive relief is granted and plaintiffs are permitted to do what they have already been granted permission to due: grow industrial hemp. There was no evidence presented at the Board hearing to demonstrate that any of the concerns raised therein were genuine.  By contrast, the hardship to plaintiffs is such that denial of relief will create an inevitable setback in the health of each of the 8,440 CBD users, effectively denying the majority of them the only medicine that they have found relief from.  Moreover, the research that was underway has been scrapped and plaintiffs are not able to start it again it without some assurance that the County will stay out of their work.  Finally, the economic damages to plaintiffs as a result of losing their otherwise competitive industry position is devastating.

D. INJUNCTIVE RELIEF SERVES THE PUBLIC'S INTEREST

Public interest plainly counsels in favor of an injunction. *Gordon v. Holder,* 721 F.3d 638, 653 (D.C. Cir. 2013) (matters of Constitutional law are always in the public interest).

E. NO BOND IS NECESSARY

   Waiver of the bond requirement is appropriate because - as defendants stated at the meeting of the Board - there's no marginal cost to the County for litigating and there is no damage or cost they will bear by granting the injunction.

## CONCLUSION

Each and every plaintiff has tremendous respect for all levels of government and does not throw around the term "bad faith" without considerable reservation. That said, it is hard to discern how there can be good faith when: (a) county counsel was handed a binder of information showing compliance with existing law and could easily see that their proposed law contradicted existing law; (b) the agricultural commissioner made assertions that flat out contradict what he must surely must know is true in order to do his job and what he could see firsthand if he had visited the property; (c) the individual board members considered the potential illegality of their actions and went forward unanimously anyway; (d) the Sheriff violated the terms written on the face of the warrant clearly in big letters; (e) the seizure of the Native American hemp occurred immediately after Columbus Day; (f) the ordinance clearly contradicts California law; and (g) County Counsel's actions usurp those rights expressly and exclusively given to the Hemp Advisory Board.  Plaintiffs understand much of this is beyond the scope of the Court's analysis on the instant motion, but wish to point out to the Court why they believe there is likely more afoot than mere negligence.

                    Respectfully Submitted,
                    LAW OFFICES OF JOSEPH SALAMA

                     /s/_____
                    JOSEPH SALAMA
                    Attorneys for Plaintiffs
                    Winnemucca Shoshoni, MBS;
                    American States University;
                    Cannabis Science Inc.;
                    Free Spirit Organics, and HRM Farms