Composite Exhibit A

Exhibit A.1

*California*

LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

**SB-566 Industrial hemp.** (2013-2014)

**Current Version:** 09/27/13 - Chaptered    **Compared to Version:** [ 09/27/13 - Chaptered ▼ ]    [ Compare Versions ] ⓘ

**SECTION 1.** This act shall be known, and may be cited, as the California Industrial Hemp Farming Act.

**SEC. 2.** The Legislature finds and declares all of the following:

(a) Industrial hemp is an agricultural crop produced in at least 30 nations, including Canada, Great Britain, France, Germany, Romania, Australia, and China, and is used by industry to produce thousands of products, including paper, textiles, food, oils, automotive parts, and personal care products.

(b) The United States Court of Appeals for the Ninth Circuit has ruled in Hemp Industries Association v. Drug Enforcement Administration, (9th Cir. 2004) 357 F.3d 1012, that the federal Controlled Substances Act of 1970 (21 U.S.C. Sec. 812(b)) explicitly excludes nonpsychoactive hemp from the definition of marijuana, and the federal government has declined to appeal that decision.

(c) The federal Controlled Substances Act of 1970 specifies the findings to which the government must attest in order to classify a substance as a schedule I drug and those findings include that the substance has a high potential for abuse, has no accepted medical use, and has a lack of accepted safety for use, none of which apply to industrial hemp.

(d) According to estimates by the Hemp Industries Association, sales of industrial hemp products in the United States have grown steadily since 1990 to more than $500 million annually in 2012.

(e) California manufacturers of hemp products currently import from around the world tens of thousands of acres' worth of hemp seed, oil, and fiber products that could be produced by California farmers at a more competitive price, and the intermediate processing of hemp seed, oil, food ingredients, and fiber could create jobs in close proximity to the fields of cultivation.

(f) In 1999, the Assembly passed House Resolution 32, which resolved that "the domestic production of industrial hemp can help protect California's environment, contribute to the growth of the state economy, and be regulated in a manner that will not interfere with the enforcement of marijuana laws."

(g) Assessment of the economic benefits of industrial hemp cultivation and determination of possible impacts on the enforcement of laws prohibiting illicit marijuana cultivation are important concerns.

(h) It is the intent of the Legislature that law enforcement not be burdened with tetrahydrocannabinol (THC) testing of industrial hemp crops when cultivation is in compliance with Section 11018.5 of the Health and Safety Code; therefore, the cultivation of industrial hemp shall be tightly controlled pursuant to Division 24 (commencing with Section 81000) of the Food and Agricultural Code, as added by Section 4 of this bill, which includes provisions consistent with all of the following:

(1) Farmers, not including established agricultural research institutions or registered seed breeders, shall not cultivate industrial hemp in acreages smaller than five acres at the same time, and no acreage of industrial hemp shall be comprised of plots smaller than one acre. Ornamental and clandestine cultivation is expressly prohibited, and the pruning and tending of individual industrial hemp plants are prohibited except when those plants are grown by an established agricultural research institution or when necessary to perform THC testing.

(2) Farmers are required, before harvest, to obtain a laboratory test report from a federally registered laboratory documenting that the THC content of their crop is within the legal limit and farmers shall destroy crops that fail the THC test.

(3) Farmers retain ownership of the harvested seed, oil, cake, and plant of the hemp crop for two years, make original copies available to law enforcement officials upon request, and are required to provide an original copy to each person purchasing, transporting, or otherwise obtaining the fiber, oil, cake, or seed of the plant from the farmer.

(4) Although they have no psychoactive effect, any resin, flowering tops, or leaves of the industrial hemp plant that are removed from the lawful field of cultivation shall be, by definition, marijuana and subject to prosecution. Farmers should take care to ensure that all flowering tops and leaves remain in the lawful field of cultivation after the harvest of seed or fiber, and the possession of those tops and leaves outside of the field of cultivation is prohibited. There is no lawful reason to harvest, collect, or process the flowering tops of industrial hemp.

(5) In addition to plant structure, height, and method of planting, the horticultural tending of cannabis plants indicates to law enforcement that it is marijuana and not industrial hemp. Signs of horticultural tending include, but are not limited to, pathways or rows within the field that provide access to each plant, the pruning of individual plants, or the culling of male plants from the field.

**SEC. 3.** Section 221 of the Food and Agricultural Code is amended to read:

**221.** (a) The "Department of Food and Agriculture Fund," which is a special fund, is continued in existence. Any moneys that are directed by law to be paid into the fund shall be paid into it and, unless otherwise specifically provided, shall be expended solely for the enforcement of the law under which the moneys were derived. The expenditure from the fund for the enforcement of any law shall not, unless otherwise specifically provided, exceed the amount of moneys that is credited to the fund pursuant to the law.

(b) Notwithstanding Section 13340 of the Government Code, all moneys deposited in the fund under the provisions enumerated in subdivision (c) are hereby continuously appropriated to the department without regard to fiscal years for expenditure in carrying out the purposes for which the moneys were deposited and for making the refunds authorized by Section 302.

(c) All moneys deposited in the fund under the provisions enumerated below are hereby exempted from Sections 13320 to 13324, inclusive, of the Government Code:

(1) Article 7 (commencing with Section 5821) and Article 7.5 (commencing with Section 5850) of Chapter 8 of Part 1 of Division 4, Chapter 1 (commencing with Section 6701) of Part 3 of Division 4, and Chapter 5 (commencing with Section 53301) of Division 18.

(2) Article 5 (commencing with Section 6001) of Chapter 9 of Part 1 of Division 4.

(3) Article 8.5 (commencing with Section 6047.1) of Chapter 9 of Part 1 of Division 4.

(4) Article 5 (commencing with Section 6981) of Chapter 2 of Part 3 of Division 4.

(5) Chapter 4 (commencing with Section 14200), Chapter 5 (commencing with Section 14501), and Chapter 6 (commencing with Section 14901) of Division 7.

(6) Part 1 (commencing with Section 16301) and Part 2 (commencing with Section 17401) of Division 9.

(7) Sections 19225, 19227, 19312, and 19315.

(8) Division 10 (commencing with Section 20001).

(9) Division 11 (commencing with Section 23001).

(10) Part 4 (commencing with Section 27501) of Division 12.

(11) Division 16 (commencing with Section 40501).

(12) Chapter 9 (commencing with Section 44971) of Division 17.

(13) Chapter 1 (commencing with Section 52001) of Division 18.

(14) Chapter 2 (commencing with Section 52251) of Division 18.

(15) Chapter 3 (commencing with Section 52651) of Division 18.

(16) Chapter 4 (commencing with Section 52851) of Division 18.

(17) Chapter 6 (commencing with Section 54001), Chapter 7 (commencing with Section 54301), and Chapter 7.5 (commencing with Section 56701) of Division 20.

(18) Section 58582.

(19) Chapter 1 (commencing with Section 61301), Chapter 2 (commencing with Section 61801), and Chapter 3 (commencing with Section 62700) of Part 3 of Division 21.

(20) Division 24 (commencing with Section 81000).

(21) Chapter 5.5 (commencing with Section 12531) of Division 5 of the Business and Professions Code.

(22) Chapter 7 (commencing with Section 12700) of Division 5 of the Business and Professions Code.

(23) Chapter 14 (commencing with Section 13400) and Chapter 15 (commencing with Section 13700) of Division 5 of the Business and Professions Code.

**SEC. 4.** Division 24 (commencing with Section 81000) is added to the Food and Agricultural Code, to read:

*DIVISION 24. Industrial Hemp*

**81000.** For purposes of this division, the following terms have the following meanings:

(a) "Board" means the Industrial Hemp Advisory Board.

(b) "Commissioner" means the county agricultural commissioner.

(c) "Established agricultural research institution" means a public or private institution or organization that maintains land for agricultural research, including colleges, universities, agricultural research centers, and conservation research centers.

(d) "Industrial hemp" has the same meaning as that term is defined in Section 11018.5 of the Health and Safety Code.

(e) "Secretary" means the Secretary of Food and Agriculture.

(f) "Seed breeder" means an individual or public or private institution or organization that is registered with the commissioner to develop seed cultivars intended for sale or research.

(g) "Seed cultivar" means a variety of industrial hemp.

(h) "Seed development plan" means a strategy devised by a seed breeder, or applicant seed breeder, detailing his or her planned approach to growing and developing a new seed cultivar for industrial hemp.

**81001.** (a) There is in the department an Industrial Hemp Advisory Board. The board shall consist of 11 members, appointed by the secretary as follows:

(1) Three of the board members shall be growers of industrial hemp that are registered pursuant to the provisions of this division. In the case of forming the initial board, and if the registration program established pursuant to this division has not yet been implemented, these board members shall be those who intend to register as growers of industrial hemp. A member of the board who is a grower of industrial hemp, or who intends to register as a grower of industrial hemp, shall be a representative of at least one of the following functions:

(A) Seed production.

(B) Seed condition.

(C) Marketing.

(D) Seed utilization.

(2) Two of the board members shall be members of an established agricultural research institution.

(3) One member of the board shall be a representative as provided by the California State Sheriffs' Association and approved by the secretary.

(4) One member of the board shall be a county agricultural commissioner.

(5) One member of the board shall be a representative of the Hemp Industries Association or a successor industry association.

(6) One member of the board shall be a representative of industrial hemp product processors or manufacturers.

(7) One member of the board shall be a representative of businesses that sell industrial hemp products.

(8) One member of the board shall be a member of the public.

(b) It is hereby declared, as a matter of legislative determination, that growers and representatives of industrial hemp product manufacturers and businesses appointed to the board pursuant to this division are intended to represent and further the interest of a particular agricultural industry, and that the representation and furtherance is intended to serve the public interest. Accordingly, the Legislature finds that persons who are appointed to the board shall be subject to the conflict-of-interest provisions described in Section 87103 of the Government Code.

(c) The term of office for a member of the board is three years. If a vacancy exists, the secretary shall, consistent with the membership requirements described in subdivision (a), appoint a replacement member to the board for the duration of the term.

(d) A member of the board shall not receive a salary but may be reimbursed by the department for attendance at meetings and other board activities authorized by the board and approved by the secretary.

(e) The board shall advise the secretary and may make recommendations on all matters pertaining to this division, including, but not limited to, industrial hemp seed law and regulations, enforcement, annual budgets required to accomplish the purposes of this division, and the setting of an appropriate assessment rate necessary for the administration of this division.

(f) The board shall annually elect a chair from its membership and, from time to time, other officers as it deems necessary.

(g) The board shall meet at the call of its chair or the secretary, or at the request of any four members of the board. The board shall meet at least once a year to review budget proposals and fiscal matters related to the proposals.

**81002.** (a) Except when grown by an established agricultural research institution or by a registered seed breeder developing a new California seed cultivar, industrial hemp shall only be grown if it is on the list of approved seed cultivars.

(b) The list of approved seed cultivars shall include all of the following:

(1) Industrial hemp seed cultivars that have been certified on or before January 1, 2013, by member organizations of the Association of Official Seed Certifying Agencies, including, but not limited to, the Canadian Seed Growers' Association.

(2) Industrial hemp seed cultivars that have been certified on or before January 1, 2013, by the Organization of Economic Cooperation and Development.

(3) California varieties of industrial hemp seed cultivars that have been certified by a seed-certifying agency pursuant to Article 6.5 (commencing with Section 52401) of Chapter 2 of Division 18.

(c) Upon recommendation by the board or the department, the secretary may update the list of approved seed cultivars by adding, amending, or removing seed cultivars.

(1) The adoption, amendment, or repeal of the list of approved seed cultivars, and the adoption of a methodology and procedure to add, amend, or remove a seed cultivar from the list of approved seed cultivars, pursuant to this section shall not be subject to the requirements of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

(2) The department, in consultation with the board, shall hold at least one public hearing with public comment to determine the methodology and procedure by which a seed cultivar is added, amended, or removed from the list of approved seed cultivars.

(3) The department shall finalize the methodology and procedure to add, amend, or remove a seed cultivar from the list of approved seed cultivars and send the methodology and procedure to the Office of Administrative Law.

The Office, in turn, shall publish and print the methodology and procedure in the same manner as a State without further review pursuant to Article 6 (commencing with Section 11349) of Chapter 3.5 of Part 1 of Division 3 of Title 2 of the Government Code. The methodology and procedure shall do all of the following:

(A) Indicate that the methodology and procedure are adopted pursuant to this division.

(B) State that the methodology and procedure are being transmitted for filing.

(C) Request that the Office of Administrative Law publish a notice of the filing of the methodology and procedure and print an appropriate reference in Title 3 of the California Code of Regulations.

(d) The department, in consultation with the board, may determine the manner in which the public is given notice of the list of approved seed cultivars, and any addition, amendment, or removal from that list.

**81003.** (a) Except for an established agricultural research institution, and before cultivation, a grower of industrial hemp for commercial purposes shall register with the commissioner of the county in which the grower intends to engage in industrial hemp cultivation.

(1) The application shall include all of the following:

(A) The name, physical address, and mailing address of the applicant.

(B) The legal description, Global Positioning System coordinates, and map of the land area on which the applicant plans to engage in industrial hemp cultivation, storage, or both.

(C) The approved seed cultivar to be grown and whether the seed cultivar will be grown for its grain or fiber, or as a dual purpose crop.

(2) (A) The application shall be accompanied by a registration fee, as determined pursuant to Section 81005.

(B) A registration issued pursuant to this section shall be valid for two years, after which the registrant shall renew his or her registration and pay an accompanying renewal fee, as determined pursuant to Section 81005.

(b) If the commissioner determines that the requirements for registration pursuant to this division are met, the commissioner shall issue a registration to the applicant.

(c) A registrant that wishes to alter the land area on which the registrant conducts industrial hemp cultivation, storage, or both, shall, before altering the area, submit to the commissioner an updated legal description, Global Positioning System coordinates, and map specifying the proposed alteration. Once the commissioner has received the change to the registration, the commissioner shall notify the registrant that it may cultivate industrial hemp on the altered land area.

(d) A registrant that wishes to change the seed cultivar grown shall submit to the commissioner the name of the new, approved seed cultivar to be grown. Once the commissioner has received the change to the registration, the commissioner shall notify the registrant that it may cultivate the new seed cultivar.

(e) The commissioner shall transmit information collected under this section to the department.

**81004.** (a) Except when grown by an established agricultural research institution, and before cultivation, a seed breeder shall register with the commissioner of the county in which the seed breeder intends to engage in industrial hemp cultivation.

(1) The application shall include all of the following:

(A) The name, physical address, and mailing address of the applicant.

(B) The legal description, Global Positioning System coordinates, and map of the land area on which the applicant plans to engage in industrial hemp cultivation, storage, or both.

(C) The approved seed cultivar to be grown and whether the seed cultivar will be grown for its grain or fiber, as a dual purpose crop, or for seed production.

(D) If an applicant intends to develop a new California seed cultivar to be certified by a seed-certifying agency, the applicant shall include all of the following:

(i) The name of the seed-certifying agency that will be conducting the certification.

(ii) The seed certification number used to ... entification number of the California seed certification...

Case 2:17-cv-02274-KJM-EFB   Document 57-1   Filed 04/06/18   Page 8 of 23

(iii) A seed development plan specifying how the listed industrial hemp varieties will be used in the development of the new seed cultivar, measures that will be taken to prevent the unlawful use of industrial hemp or seed cultivars under this division, and a procedure for the maintenance of records documenting the development of the new seed cultivar.

(2) (A) The application shall be accompanied by a registration fee, as determined pursuant to Section 81005.

(B) A registration issued pursuant to this section shall be valid for two years, after which the registrant shall renew its registration and pay an accompanying renewal fee, as determined pursuant to Section 81005.

(b) If the commissioner determines that the requirements for registration pursuant to this division are met, the commissioner shall issue a seed breeder registration to the applicant.

(c) A registrant that wishes to alter the land area on which the registrant conducts industrial hemp cultivation, storage, or both, shall, before altering the area, submit to the commissioner an updated legal description, Global Positioning System coordinates, and map specifying the proposed alteration. Once the commissioner has received the change to the registration, the commissioner shall notify the registrant that it may cultivate industrial hemp on the altered land area.

(d) A registrant that wishes to change the seed cultivar grown shall submit to the commissioner the name of the new, approved seed cultivar to be grown. Once the commissioner has received the change to the registration, the commissioner shall notify the registrant that it may cultivate the new seed cultivar.

(e) A registrant developing a new California seed cultivar who wishes to change any provision of the seed development plan shall submit to the commissioner the revised seed development plan. Once the commissioner has received the change to the registration, the commissioner shall notify the registrant that he or she may cultivate under the revised seed development plan.

(f) All records pertaining to the seed development plan shall be kept and maintained by the seed breeder and be available upon request by the commissioner, a law enforcement agency, or a seed certifying agent.

(g) The commissioner shall transmit information collected under this section to the department.

**81005.** (a) The department shall establish a registration fee and appropriate renewal fee to be paid by growers of industrial hemp for commercial purposes and seed breeders, not including an established agricultural research institution, to cover the actual costs of implementing, administering, and enforcing the provisions of this division.

(b) Fees collected by the commissioners upon registration or renewal pursuant to Section 81003 or 81004 shall be forwarded, according to procedures set by the department, to the department for deposit into the Department of Food and Agriculture Fund to be used for the administration and enforcement of this division.

**81006.** (a) (1) Except when grown by an established agricultural research institution or a registered seed breeder, industrial hemp shall be grown only as a densely planted fiber or oilseed crop, or both, in acreages of not less than five acres at the same time, and no portion of an acreage of industrial hemp shall include plots of less than one contiguous acre.

(2) Registered seed breeders, for purposes of seed production, shall only grow industrial hemp as a densely planted crop in acreages of not less than two acres at the same time, and no portion of the acreage of industrial hemp shall include plots of less than one contiguous acre.

(3) Registered seed breeders, for purposes of developing a new California seed cultivar, shall grow industrial hemp as densely as possible in dedicated acreage of not less than one acre and in accordance with the seed development plan. The entire area of the dedicated acreage is not required to be used for the cultivation of the particular seed cultivar.

(b) Ornamental and clandestine cultivation of industrial hemp is prohibited. All plots shall have adequate signage indicating they are industrial hemp.

(c) Pruning and tending of individual industrial hemp plants is prohibited, except when grown by an established agricultural research institution or when the action is necessary to perform the THC testing described in this section.

(d) Onsite or offsite storage of industrial hemp grown or cultivated by an established agricultural research institution, when the action is necessary to perform the THC testing described in this section, or for purposes of seed production and development by a registered seed breeder.

(e) Industrial hemp shall include products imported under the Harmonized Tariff Schedule of the United States (2013) of the United States International Trade Commission, including, but not limited to, hemp seed, per subheading 1207.99.03, hemp oil, per subheading 1515.90.80, oilcake, per subheading 2306.90.01, true hemp, per heading 5302, true hemp yarn, per subheading 5308.20.00, and woven fabrics of true hemp fibers, per subheading 5311.00.40.

(f) Except when industrial hemp is grown by an established agricultural research institution, a registrant that grows industrial hemp under this section shall, before the harvest of each crop and as provided below, obtain a laboratory test report indicating the tetrahydrocannabinol (THC) levels of a random sampling of the dried flowering tops of the industrial hemp grown.

(1) Sampling shall occur as soon as practicable when the THC content of the leaves surrounding the seeds is at its peak and shall commence as the seeds begin to mature, when the first seeds of approximately 50 percent of the plants are resistant to compression.

(2) The entire fruit-bearing part of the plant including the seeds shall be used as a sample. The sample cut shall be made directly underneath the inflorescence found in the top one-third of the plant.

(3) The sample collected for THC testing shall be accompanied by the following documentation:

(A) The registrant's proof of registration.

(B) Seed certification documentation for the seed cultivar's used.

(C) The THC testing report for each certified seed cultivar used.

(4) The laboratory test report shall be issued by a laboratory registered with the federal Drug Enforcement Administration, shall state the percentage content of THC, shall indicate the date and location of samples taken, and shall state the Global Positioning System coordinates and total acreage of the crop. If the laboratory test report indicates a percentage content of THC that is equal to or less than three-tenths of 1 percent, the words "PASSED AS CALIFORNIA INDUSTRIAL HEMP" shall appear at or near the top of the laboratory test report. If the laboratory test report indicates a percentage content of THC that is greater than three-tenths of 1 percent, the words "FAILED AS CALIFORNIA INDUSTRIAL HEMP" shall appear at or near the top of the laboratory test report.

(5) If the laboratory test report indicates a percentage content of THC that is equal to or less than three-tenths of 1 percent, the laboratory shall provide the person who requested the testing not less than 10 original copies signed by an employee authorized by the laboratory and shall retain one or more original copies of the laboratory test report for a minimum of two years from its date of sampling.

(6) If the laboratory test report indicates a percentage content of THC that is greater than three-tenths of 1 percent and does not exceed 1 percent, the registrant that grows industrial hemp shall submit additional samples for testing of the industrial hemp grown.

(7) A registrant that grows industrial hemp shall destroy the industrial hemp grown upon receipt of a first laboratory test report indicating a percentage content of THC that exceeds 1 percent or a second laboratory test report pursuant to paragraph (6) indicating a percentage content of THC that exceeds three-tenths of 1 percent but is less than 1 percent. If the percentage content of THC exceeds 1 percent, the destruction shall take place within 48 hours after receipt of the laboratory test report. If the percentage content of THC in the second laboratory test report exceeds three-tenths of 1 percent but is less than 1 percent, the destruction shall take place as soon as practicable, but no later than 45 days after receipt of the second test report.

(8) A registrant that intends to grow industrial hemp and who complies with this section shall not be prosecuted for the cultivation or possession of marijuana as a result of a laboratory test report that indicates a percentage content of THC that is greater than three-tenths of 1 percent but does not exceed 1 percent.

(9) Established agricultural research institutions shall be permitted to cultivate or possess industrial hemp with a laboratory test report that indicates a percentage content of THC that is greater than three-tenths of 1 percent if that cultivation or possession contributes to the development of types of industrial hemp that will comply with the three-tenths of 1 percent THC limit established in this division.

(10) Each applicant and every person growing industrial hemp that is licensed as provided in this section shall retain an original signed copy of the laboratory test report for two years from its date of sampling, make an original signed copy of the laboratory test report available to the department, the commissioner, or law enforcement officials or their designees upon request, and shall provide an original copy of the laboratory test report to each person purchasing, transporting, or otherwise obtaining from the registrant that grows industrial hemp the fiber, oil, cake, or seed, or any component of the seed, of the plant.

(g) If, in the Attorney General's opinion issued pursuant to Section 8 of the act that added this division, it is determined that the provisions of this section are not sufficient to comply with federal law, the department, in consultation with the board, shall establish procedures for this section that meet the requirements of federal law.

**81007.** (a) Except as provided in subdivision (b) or as necessary to perform testing pursuant to subdivision (f) of Section 81006, the possession, outside of a field of lawful cultivation, of resin, flowering tops, or leaves that have been removed from the hemp plant is prohibited.

(b) The presence of a de minimis amount, or insignificant number, of hemp leaves or flowering tops in hemp bales that result from the normal and appropriate processing of industrial hemp shall not constitute possession of marijuana.

**81008.** (a) Not later than January 1, 2019, or five years after the provisions of this division are authorized under federal law, whichever is later, the Attorney General shall report to the Assembly and Senate Committees on Agriculture and the Assembly and Senate Committees on Public Safety the reported incidents, if any, of the following:

(1) A field of industrial hemp being used to disguise marijuana cultivation.

(2) Claims in a court hearing by persons other than those exempted in subdivision (f) of Section 81006 that marijuana is industrial hemp.

(b) A report submitted pursuant to subdivision (a) shall be submitted in compliance with Section 9795 of the Government Code.

(c) Pursuant to Section 10231.5 of the Government Code, this section is repealed on January 1, 2023, or four years after the date that the report is due, whichever is later.

**81009.** Not later than January 1, 2019, or five years after the provisions of this division are authorized under federal law, whichever is later, the board, in consultation with the Hemp Industries Association, or its successor industry association, shall report the following to the Assembly and Senate Committees on Agriculture and the Assembly and Senate Committees on Public Safety:

(a) The economic impacts of industrial hemp cultivation, processing, and product manufacturing in California.

(b) The economic impacts of industrial hemp cultivation, processing, and product manufacturing in other states that may have permitted industrial hemp cultivation.

**81010.** This division shall not become operative unless authorized under federal law.

**SEC. 5.** Section 11018 of the Health and Safety Code is amended to read:

**11018.** "Marijuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds of that plant; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include industrial hemp, as defined in Section 11018.5, except where the plant is cultivated or processed for purposes not expressly allowed for by Division 24 (commencing with Section 81000) of the Food and Agricultural Code.

**SEC. 6.** Section 11018.5 is added to the Health and Safety Code, to read:

**11018.5.** "Industrial hemp" means a fiber or oilseed crop, or both, that is limited to nonpsychoactive types of the plant Cannabis sativa L. and the seed produced therefrom, having no more than three-tenths of 1 percent tetrahydrocannabinol (THC) contained in the dried flowering tops, and that is cultivated and processed exclusively for the purpose of producing the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, or any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin or flowering tops extracted therefrom, fiber, oil, or cake, or the sterilized seed, or any component of the seed, of the plant that is incapable of germination.

Case 2:17-cv-02271-KJM-EFB Document 57-1 Filed 04/06/18 Page 11 of 23

**SEC.** 7. No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because a local agency or school district has the authority to levy service charges, fees, or assessments sufficient to pay for the program or level of service mandated by this act or because costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

**SEC. 8.** (a) This act shall not become operative unless authorized under federal law.

(b) If this act becomes operative, the Attorney General shall issue an opinion on the extent of that authorization under federal law and California law, the operative date of those provisions, and whether federal law imposes any limitations that are inconsistent with the provisions of this act. The Attorney General should complete the opinion as soon as possible or within four months of authorization under federal law.

(c) The Attorney General shall post the opinion described in subdivision (b) on the office of the Attorney General's Internet Web site.

Exhibit A.2

**SENATE RULES COMMITTEE**                                            SB 566
Office of Senate Floor Analyses
1020 N Street, Suite 524
(916) 651-1520       Fax: (916) 327-4478

---

UNFINISHED BUSINESS

---

Bill No:    SB 566
Author:     Leno (D)
Amended:    9/6/13
Vote:       21

---

SENATE AGRICULTURE COMMITTEE: 5-0, 4/2/13
AYES: Galgiani, Cannella, Berryhill, Lieu, Wolk

SENATE PUBLIC SAFETY COMMITTEE: 7-0, 4/30/13
AYES: Hancock, Anderson, Block, De León, Knight, Liu, Steinberg

SENATE APPROPRIATIONS COMMITTEE: 7-0, 5/23/13
AYES: De León, Walters, Gaines, Hill, Lara, Padilla, Steinberg

SENATE FLOOR: 39-0, 5/29/13
AYES: Anderson, Beall, Berryhill, Block, Calderon, Cannella, Corbett, Correa,
   De León, DeSaulnier, Emmerson, Evans, Fuller, Gaines, Galgiani, Hancock,
   Hernandez, Hill, Hueso, Huff, Jackson, Knight, Lara, Leno, Lieu, Liu,
   Monning, Nielsen, Padilla, Pavley, Price, Roth, Steinberg, Torres, Walters,
   Wolk, Wright, Wyland, Yee
NO VOTE RECORDED: Vacancy

ASSEMBLY FLOOR: 70-5, 9/10/13 - See last page for vote

---

**SUBJECT:**   Industrial hemp

**SOURCE:**    Hemp Industries Association
               Vote Hemp

---

**DIGEST:**   This bill allows the regulated cultivation and processing of industrial
hemp upon federal approval, as specified.

                                                              CONTINUED

<u>Assembly Amendments</u> make numerous additions to this bill including:  (1) findings and declarations related to the use and economic benefits of industrial hemp and the intent of the Legislature that law enforcement not be burdened with tetrahydrocannabinol (THC) testing of industrial hemp crops; (2) includes various definitions for purposes of this bill, including "seed breeder" and "seed cultivator;" (3) revises the membership of the Industrial Hemp Advisory Board; (4) prohibits the pruning and tending of individual industrial hemp plants, except as provided; and (5) deletes and exemption from the destruction requirement, as specified.

## ANALYSIS:

Existing federal law:

1.  Defines "marijuana" as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.  Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination."

2.  Places controlled substances in five schedules, ranked by medical benefit and potential for abuse.  Schedule I controlled substances are deemed to have no medical benefits and high potential for abuse.

3.  Lists marijuana as a schedule I controlled substance.

4.  Lists THC as a separate schedule I substance.  As clarified by case law, THC in Schedule I applies only to synthetic THC, because "if naturally-occurring THC were covered under THC, there would be no need to have a separate category for marijuana, … which contains naturally-occurring THC."

Existing law:

1.  Defines "marijuana" as all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin.  It does not include the mature stalks

CONTINUED

of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination.

2.  States that except as otherwise provided by law, every person who plants, cultivates harvests, dries, or processes, any marijuana, or any part thereof, except as otherwise provided by law, shall be punishable by imprisonment in the county jail as specified.

3.  States that except as otherwise provided by law, every person that possesses marijuana for the purposes of sale shall be punished by imprisonment in the county jail as specified.

4.  Provides, except as authorized by law, every person who possesses any concentrated cannabis shall be punished by imprisonment in the county jail for a period of not more than one year or by a fine of not more than $500, or by both such fine and imprisonment, or shall be punished by imprisonment in the county jail as specified.

5.  States that except as authorized by law, every person who possesses not more than 28.5 grams of marijuana, other than concentrated cannabis, is guilty of an infraction punishable by a fine of not more than $100.

6.  States that except as authorized by law, every person who possesses more than 28.5 grams of marijuana, other than concentrated cannabis, shall be punished by imprisonment in the county jail for a period of not more than six months or by a fine of not more than $500, or by both such fine and imprisonment.

This bill:

1.  Establishes the California Industrial Hemp Farming Act (Act).

2.  Defines "industrial hemp" as a fiber or oilseed crop, or both, that is limited to nonpsychoactive types of the plant Cannabis sativa L. and the seed produced therefrom, having no more than three-tenths of 1% THC contained in the dried flowering tops, and that is cultivated and processed exclusively for the purpose of producing the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, or any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin or

CONTINUED

flowering tops extracted therefrom, fiber, oil, or cake, or the sterilized seed or any component of the seed, of the plant that is incapable of germination.

3. Revises the definition of "marijuana" to clarify that it does not include industrial hemp, as defined in this bill, except where the plant is cultivated or processed for purposes not expressly allowed.

4. Defines specified terms related to the cultivation of industrial hemp.

5. States that there is in the Department of Food and Agriculture (DFA) an Industrial Hemp Advisory Board (Board) and specifies who shall sit on the Board.

6. States except when grown by an established agricultural research institution or by a registered seed breeder developing a new California seed cultivar, industrial hemp shall only be grown if it is on the list of approved seed cultivars.

7. Provides guidelines on what shall be included in the list of approved seed cultivars.

8. Provides the procedure for the adoption, amendment or repeal of the list of approved seed cultivars.

9. States that, except for an established agricultural research institution, and before cultivation, a grower of industrial hemp for commercial purposes shall register with the commissioner of the county in which the grower intends to engage in industrial hemp cultivation.

10. States that, except for an established agricultural research institution, and before cultivation, a seed breeder shall register with the commissioner of the county in which the seed breeder intends to engage in industrial hemp cultivation.

11. Specifies the application procedures for a seed breeder and a grower of industrial hemp to register with the commissioner of the county.

12. Requires the County Agricultural Commissioner to transmit information collected during the application process to DFA.

CONTINUED

13. Provides requirements for keeping and maintaining records pertaining to the seed development plan.

14. Requires DFA to establish a registration fee and appropriate renewal fee to be paid by growers of industrial hemp for commercial purposes and seed breeders, not including an established agricultural research institution, to cover the costs of implementing, administering, and enforcing these provisions.

15. States that fees collected by the commissioners upon registration or renewal shall be forwarded, according to procedures set by DFA, to the DFA for deposit into the Department of Food and Agriculture Fund to be used for the administration and enforcement of these provisions.

16. States that, except when grown by an established agricultural research institution or registered seed breeder, industrial hemp shall be grown only as a densely planted fiber or oilseed crop, or both, in acreages of not less than five acres at the same time, and no portion of an acreage of industrial hemp shall include plots of less than one contiguous acre.

17. Requires registered seed breeders to grow industrial hemp as densely as possible in dedicated acreage of not less than one acre and in accordance with the seed development plan.

18. Requires registered seed breeders, for purposes of seed production, to only grow industrial hemp as a densely planted crop in acreages of not less than two acres at the same time, and no portion of the acreage of industrial hemp shall include plots of less than one contiguous acre.

19. Prohibits ornamental and clandestine cultivation, as well as the pruning, culling, and tending of individual plants, of industrial hemp.

20. Prohibits the pruning and tending of individual industrial hemp plants, except as provided.

21. Prohibits the culling of industrial hemp, except as provided.

22. Requires all plots to have adequate signage indicating they are industrial hemp.

23. Provides that industrial hemp shall include products imported under the Harmonized Tariff Schedule of the United States (2013) of the U.S. International Trade Commission.

CONTINUED

24. Requires, except when industrial hemp is grown by an established agricultural research institution, a registrant that grows industrial hemp under this Act to obtain a laboratory test report indicating the THC levels of a random sampling of the dried flowering tops of the industrial hemp grown before the harvest of each crop as specified.

25. Requires certain documentation to accompany the sample of dried flowering tops of the industrial hemp plant collected for THC testing.

26. Mandates, not later than January 1, 2019, or five years after the provisions of this bill are authorized under federal law, whichever is later, the Attorney General (AG) to report to the Assembly and Senate Agriculture Committees and the Assembly and Senate Public Safety Committees the reported incidents, if any, of the following:

   A. A field of industrial hemp being used to disguise marijuana cultivation; or,

   B. Claims in a court hearing by persons other than those specifically exempted that marijuana is industrial hemp.

27. States pursuant to existing law, this section related to the AG's report is repealed on January 1, 2023, or four years after the date that the report is due, whichever is later.

28. Requires, not later than January 1, 2019, or five years after the provisions of this bill are authorized under federal law, whichever is later, the Board, in consultation with the Hemp Industries Association or its successor industry association, to report the following to the Assembly and Senate Agriculture Committees and the Assembly and Senate Public Safety Committees:

   A. The economic impacts of industrial hemp cultivation, processing, and product manufacturing in California; and,

   B. The economic impacts of industrial hemp cultivation, processing, and product manufacturing in other states that may have permitted industrial hemp cultivation.

29. States that these provisions shall not become operative unless authorized under federal law.

CONTINUED

30. Requires, if these provisions become operative, the AG to issue an opinion on the extent of authorization under federal law and California law, the operative date of those provisions, and whether federal law imposes any limitations that are inconsistent with these provisions.

31. Requires the AG to complete the opinion required in the provisions of this Act as soon as possible or within four months of authorization under federal law.

32. States, if in the AG's opinion it is determined that the provisions of this Act are not sufficient to comply with federal law, the DFA, in consultation with the Board, shall establish procedures that meet the requirements of federal law.

33. States that the AG shall post the opinion on its Internet Web site.

34. Makes various legislative declarations and findings on industrial hemp.

Background

Congressional Research Service (CRS) report. In 2012, CRS issued a report titled "Hemp as an Agricultural Commodity." This report describes the current state of hemp in the U.S., including production and use, legal status, and legislative activity. CRS reports that "although marijuana is also a variety of cannabis, it is genetically distinct from industrial hemp and is further distinguished by its use and chemical makeup." The report continues that "nine states have legalized the cultivation and research of industrial hemp, including Hawaii, Kentucky, Maine, Maryland, Montana, North Dakota, Oregon, Vermont, and West Virginia. However, because federal law still prohibits cultivation, a grower still must get permission from the DEA in order to grow hemp or face the possibility of federal charges or property confiscation, despite having a state-issued permit."

Prior Legislation

AB 388 (Strom-Martin, 2002) would have requested the University of California to assess the economic opportunities of specialty or alternative fiber crops, including industrial hemp, and report to the Legislature by January 1, 2004. The bill was vetoed by Governor Davis.

AB 448 (Strom-Martin, 2001) would have authorized the Secretary of Department of Food and Agriculture (DFA) to issue licenses to cultivate hemp for commercial purposes. The bill failed passage in the Assembly Agriculture Committee,

CONTINUED

AB 1147 (Leno, 2006) would have permitted the cultivation of industrial hemp in California. The bill was vetoed by Governor Schwarzenegger. In his veto message, the Governor stated that hemp is still considered a cannabis plant regardless of its THC content and, therefore, illegal under federal law.

AB 684 (Leno, 2007) would have permitted the cultivation of industrial hemp in California under a pilot program in four counties. The bill was vetoed by Governor Schwarzenegger. In his veto message, the Governor stated law enforcement has expressed concerns that implementation of this measure could place a drain on their resources and cause significant problems with drug enforcement activities.

SB 676 (Leno, 2011) would have permitted the cultivation of industrial hemp in California under a pilot program in four counties. The bill was vetoed by Governor Brown. In his veto message, the Governor stated that hemp is still a federally regulated controlled substance, although it is absurd that hemp is being imported into the state, but our farmers cannot grow it.

**FISCAL EFFECT**:  Appropriation: Yes   Fiscal Com.: Yes   Local: Yes

According to the Assembly Appropriations Committee:

- Minor, likely absorbable, costs to DFA to support the Industrial Hemp Advisory Board.

- Minor, likely absorbable, costs to DFA to establish and maintain a list of approved seed varietals.

- Unknown administrative costs, fully covered by fee revenue, to county agricultural commissions to operate a registration program and to implement and enforce the Act.

- Costs of laboratory reports would be borne by registrants.

- Minor absorbable reporting costs to the Department of Justice.

**SUPPORT:**  (Verified  9/10/13)

Hemp Industries Association (co-source)
Vote Hemp (co-source)
American Civil Liberties Union

CONTINUED

Business Alliance for Commerce in Hemp
California Certified Organic Farmers
California State Grange
California State Sheriffs' Association
Colorganics Inc.
Community Alliance of Family Farmers
County of Lake
Dash Hemp
Datsusara
Dr. Bronner's Magic Soaps
Drug Policy Alliance
Ecological Farming Association
Hemp Aware
Hempsteads
Hemptopia Inc.
Hempy
Humbolt Traders
Instituto Laboral de la Raza
Jungmaven
Kern County Sheriff Donny Youngblood
Kings County Sheriff Dave Robinson
Knoll Farms
Lafes Natural BodyCare
Lazy Dog Designs
Nutiva
Planning and Conservation League
Santa Barbara Hemp Company
Sierra Club California
Teamsters
The Hemp Road
The Living Temple
United Food and Commercial Workers 8 – Golden State
United Food and Commercial Workers, Western States Council
US Hemp Oil, Inc.

**OPPOSITION:**   (Verified  9/10/13)

Association for Los Angeles Deputy Sheriffs
Association of Orange County Deputy Sheriffs
California Fraternal Order of Police
California Narcotic Officers' Association

CONTINUED

California Police Chiefs Association
Long Beach Police Officers Association
Los Angeles County Professional Peace Officers Association
Los Angeles Police Protective League
Riverside Sheriffs Association
Sacramento Deputy Sheriffs Association
San Diego County Sheriff's Department
Santa Ana Police Officers Association

**ARGUMENTS IN SUPPORT:**   According to the author, "SB 566 will allow California farmers to be one of the most prepared farmers in America to grow hemp once the federal government allows it. Industrial hemp is a variety of the species Cannabis sativa L. that has no psychoactive qualities because it contains less than three-tenths of one percent THC. Even though it is a distant cousin of marijuana, which ranges from three to 15 percent THC content, industrial hemp is not a drug and it is not marijuana.

"This bill creates jobs. California companies account for over 50 percent of the revenues of the United States retail market for hemp products which is approximately $500 million and growing. California hemp cultivation will create the need for hemp seed and fiber processing facilities. With so many California-based hemp industry companies, investors will take the opportunity to support the development of hemp processing operations that would employ numerous Californians.

**ARGUMENTS IN OPPOSITION:**   According to the opponents, "this bill will undermine law enforcement efforts to curtail marijuana cultivation and will result in significantly increased costs in connection with the prosecution of marijuana trafficking cases." Additionally, the opponents state, "the impact of legalizing hemp will be that marijuana cultivators will be able to camouflage their illegal grows with a perimeter of same sex hemp plants. Effectively, this will require law enforcement to test plants for THC content before taking any action."

According to the opponents, "since the state crime labs currently are not equipped to test for THC content, they will either have to incur the costs of gearing up for this function, or local agencies will have to incur the additional costs of finding a private lab to conduct testing... The increased costs for marijuana trafficking prosecutions are incalculable."

CONTINUED

**ASSEMBLY FLOOR**: 70-5, 9/10/13
AYES:  Achadjian, Alejo,  Ammiano, Atkins, Bigelow,  Bloom, Bocanegra,
   Bonilla,  Bonta, Bradford, Brown, Buchanan,  Ian Calderon, Campos, Chau,
   Chávez, Chesbro, Conway, Cooley, Dahle,  Daly, Dickinson, Donnelly,
   Eggman,  Fong, Garcia, Gatto, Gomez, Gonzalez, Gordon, Gorell, Gray,
   Hagman,  Hall, Harkey,  Roger Hernández, Holden, Jones, Jones-Sawyer,
   Levine, Linder, Logue, Lowenthal,  Maienschein, Mansoor, Melendez, Mitchell,
   Mullin,  Nazarian,  Nestande, Olsen, Pan, Patterson, Perea, V. Manuel Pérez,
   Quirk, Quirk-Silva,  Rendon, Salas, Skinner, Stone, Ting, Wagner, Waldron,
   Weber, Wieckowski, Wilk, Williams,  Yamada, John A. Pérez
NOES: Fox, Beth Gaines, Grove, Morrell,  Muratsuchi
NO VOTE RECORDED:  Allen,  Frazier, Medina, Vacancy, Vacancy


JL:kd  9/11/13   Senate Floor Analyses
                SUPPORT/OPPOSITION:  SEE ABOVE
                    **** **END** ****