UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FREE SPIRIT ORGANICS, NAC, et al.,

Plaintiffs,

v.

SAN JOAQUIN COUNTY BOARD OF SUPERVISORS, et al.,

Defendants.

No. 2:17-cv-02271-KJM-EFB

ORDER

On October 10, 2017, the San Joaquin County Sheriff entered and seized a hemp crop from a 26.19 acre parcel of land on which plaintiffs owned and operated an industrial hemp operation. On October 27, 2017, plaintiffs initiated this action, claiming this seizure, perpetuated by a number of San Joaquin County officials, deprived them of certain constitutional protections. Defendants have now moved to dismiss the second amended complaint. Having considered the relevant briefing and conducted an evidentiary hearing to address a standing challenge against one of the plaintiffs, the court GRANTS defendants' motion to dismiss on standing grounds.

///

///

///

# I. BACKGROUND

## A. Parties

Plaintiffs in this action are as follows.[1] Free Spirit Organics ("FSO"), NAC, is a tribal owned Native American company organized under the laws of the State of Nevada.[2] Second Am. Compl. ("SAC") ¶ 3, ECF No. 35. FSO served as the manager and operator of a 250-acre plot of land in Stockton, California on which the industrial hemp grow at issue took place. *Id.* American States University ("ASU") is an institution of higher education, as defined under section 81000 of the California Food and Agricultural Code; ASU is FSO's business partner in the Stockton hemp grow. *Id.* ¶ 4. HRM Farms, Inc., a California corporation with its principal place of business in Holt, California also was a partner in the grow operation. *Id.* ¶ 5. Cannabis Science, Inc. is a publicly traded company organized under the laws of Nevada, with its principal place of business in Orange County, California. *Id.* ¶ 6. Finally, plaintiff S.G. Farms is a California agricultural research organization based in Marin County, California that contracted with FSO "to assist with the subject grow and to conduct research in connection with the subject grow." *Id.* ¶ 7.

Plaintiffs name several San Joaquin County agencies and officials as defendants in this action. First, plaintiffs name the San Joaquin County Board of Supervisors, including its individual members acting in their official capacity (collectively, "Board"). *Id.* ¶ 10. Those members are Miguel Villapudua, Katherine Miller, Tom Patti, Bob Elliott and Chuck Winn. *Id.* Plaintiffs also name Erin Hiroko Sakata, an attorney working for the San Joaquin County

---

[1] On January 7 and 8, 2019, the court held an evidentiary hearing to address the issue of standing as to certain plaintiffs. *See* ECF Nos. 90, 91. During that hearing, the following plaintiffs were voluntarily dismissed from this action: Winnemucca Shoshoni, MBS, Gerard Galvez, Bruce Granados, Scott Rayborn, Justin Granados, Glen Burgin, Doreen Morales, Gil Granados and Gil Granados, Jr.

[2] At the January 8, 2019 evidentiary hearing, the parties stipulated that wherever the record refences the entity Free Spirit Organics, LLC, that reference should be construed to identify Free Spirit Organics, NAC. ECF No. 91.

counsel's office. *Id.* ¶ 11. Finally, plaintiffs name the San Joaquin County Sheriff and Doe defendants.[3] *Id.* ¶¶ 12–13.

B. Factual Allegations

Plaintiffs leased a 250-acre parcel of land in San Joaquin County for the purpose of operating an industrial hemp operation on 26.19 acres of that parcel. *Id.* ¶ 27. Plaintiffs applied for all necessary paperwork to conduct the grow. *Id.* FSO is an industrial hemp cultivator approved by the Nevada Department of Agriculture and HRM is a hemp grower registered with the San Joaquin County Agricultural Commission. *Id.* ¶¶ 28–29. Hoping to produce a yield of the highest quality, plaintiffs also allege they contacted S.G. Farms to provide consultation services regarding the grow. *Id.* ¶¶ 30–32. The parties reached a "cooperative consulting agreement" to achieve that end. *Id.* ¶¶ 31–32. Plaintiffs allege they were authorized to conduct grow operations by way of S.G. Farms' qualifications under California Food and Agricultural Code section 81000(c)(1). *Id.* ¶ 33.

In June 2017, plaintiffs began to cultivate the hemp grow. *Id.* ¶ 34. On July 31, 2017, the County Agricultural Commission approved the grow operation. *Id.* The Commission identified HRM as a "grower of hemp" on the parcel; S.G. Farms regularly visited the parcel to perform testing and maintenance and Williams Bills ("Chief Bills"), a member of the Native American tribe of Winnemucca Shoshoni, oversaw general grow operations. *Id.* ¶¶ 8, 34. Plaintiffs further allege they tested the hemp to ensure it fell below the 0.3 percent THC [tetrahydrocannabinol] limit permitted for industrial hemp and posted signage on the grow site to ensure it was "unmistakably identified [] as industrial hemp." *Id.* ¶¶ 35–36.

On August 29, 2017, County Counsel Sakata sent plaintiffs a letter claiming that, based on an August 17, 2017 investigation, their "cannabis grow" was prohibited by County law. *Id.* ¶ 37. The letter further demanded plaintiffs produce evidence by September 11, 2017, supporting their claim of being an authorized "research cultivator." *Id.* On September 11, 2017,

[3] Plaintiffs also named the San Joaquin County District Attorney as a defendant in this action; however, at the April 20, 2018 motion hearing, the court dismissed the District Attorney from this action with prejudice.

plaintiffs responded to the County's letter, providing a factual and legal basis for their alleged authorization to conduct the grow. *Id.* ¶ 38. Plaintiffs' responsive letter is attached as exhibit B to the second amended complaint. *See id.*, Ex. B at 32–48, ECF No. 36.[4] On September 12, 2017, the County responded by letter, taking the position plaintiffs' letter was non-responsive and did not demonstrate they qualified as an "Established Agricultural Research Institution for the purposes of agricultural or academic research." *Id.* ¶ 39. On September 15, 2017, plaintiffs again replied by letter and provided supporting evidence attempting to substantiate "currently approved [educational] programs" offered by ASU. *Id.* ¶ 40 (alteration in original).

On September 26, 2017, the Board of Supervisors passed ordinance no. 4497, an "Interim Urgency Ordinance Declaring a Temporary Moratorium on the Cultivation of Industrial Hemp by 'Established Agricultural Research Institutions' within the Unincorporated Areas of San Joaquin County." *Id.* ¶¶ 41–47; *id.*, Ex. C at 49–56. Thereafter, on September 28, 2017, Sakata sent plaintiffs a letter attaching the ordinance, warning the ordinance was effective immediately, asserting plaintiffs' grow was a public nuisance and demanding abatement. *Id.* ¶ 43; *id.*, Ex. C. On October 3, 2017, in response to Sakata's latest letter, plaintiffs again had their crop tested for THC levels. *Id.* ¶ 44. The test once again revealed THC levels at 0.24%, which plaintiffs allege "clearly designat[ed] it as hemp." *Id.*

On October 5, 2017, ASU's Administrative Dean, Roger Agajanian, contacted the Board and requested a hearing be scheduled for October 24, 2017. *Id.* ¶ 45. His request was denied; however, he was informed his matter would be placed on the agenda for the Board's November 7, 2017 meeting. *Id.* The next day, October 6, 2017, Agajanian sent the Board a letter confirming the November 7, 2017 agenda item and summarizing plaintiffs' position regarding the ordinance. *Id.*; SAC, Ex. D at 57–71.

---

[4] The court considers plaintiffs' exhibits as incorporated by reference into the second amended complaint and therefore relies on their contents for purposes of resolving the present motion. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

On October 9, 2017, a law enforcement agent named Michael Eastin obtained a warrant to search the grow property, and, "the next Tuesday, one day after Columbus [D]ay,"[5] the Sheriff entered the property and seized the hemp crop. *Id.* ¶¶ 46, 52.

C. Procedural History

Plaintiffs initiated this suit on October 27, 2017, and, on October 30, 2017, filed a first amended complaint as a matter of course. ECF Nos. 1, 7. On November 17, 2017, plaintiffs moved for a temporary restraining order asking the court to temporarily enjoin ordinance no. 4479, stay any pending criminal charges brought by the County and order return of the industrial hemp seized based on the October 9, 2017 search warrant. ECF No. 21. On November 30, 2017, the court heard plaintiffs' motion for the temporary restraining order and, after considering arguments, denied the motion for failure to show a likelihood of irreparable harm. *See* ECF Nos. 29, 32.

On December 25, 2017, as the parties stipulated and the court approved, plaintiffs filed the operative second amended complaint. *See* SAC. The complaint makes the following claims: (1) ordinance no. 4479 is constitutionally preempted; (2) ordinance no. 4479 is unconstitutionally vague; (3) ordinance no. 4479 is an unlawful bill of attainder/ex post facto law; (4) defendants violated the procedural due process clause of the Fifth Amendment; and (5) defendants committed an unlawful seizure under the Fourth Amendment. *See generally id.*

On January 16, 2018, defendants moved to dismiss the second amended complaint. Mot., ECF No. 37. Prior to filing an opposition, plaintiffs Free Spirit Organics, NAC, American States University, HRM Farms and Cannabis Science, Inc. (hereinafter "FSO plaintiffs") substituted Ronda Baldwin-Kennedy as their new counsel of record.[6] *See* ECF Nos. 46, 48. S.G. Farms is the only remaining plaintiff for which Joseph Salama serves as counsel of record. The

---

[5] The second amended complaint describes the significance of this timing given the history of Native American displacement beginning with the arrival of Christopher Columbus in 1492. SAC ¶¶ 20–26.

[6] Plaintiffs William Bills and Glen Burgin also substituted Ms. Baldwin-Kennedy as counsel of record; however, as noted above, those plaintiffs previously were voluntarily dismissed as parties to this action on January 8, 2019.

FSO plaintiffs have opposed the motion, FSO Opp'n, ECF No. 59; as has S.G. Farms, S.G. Farms Opp'n, ECF No. 58. Defendants filed a consolidated reply. Reply, ECF No. 61.

On April 20, 2018, the court held a hearing on the motion to dismiss. *See* ECF No. 63. Counsel Ronda Baldwin-Kennedy appeared on behalf of the FSO plaintiffs and Joseph Salama appeared on behalf of S.G. Farms. Counsel Ronald Scholar and Derek Cole appeared for defendants. As noted above, at hearing the court dismissed the San Joaquin County District Attorney with prejudice, dismissed all but ten of the fifty unidentified Doe defendants and reserved judgment on the remainder of the motion pending resolution of the issue of standing. Thereafter, the court set an evidentiary hearing as to standing and ordered supplemental briefing on the matter. The court held the evidentiary hearing on January 7 and 8, 2019. After several stipulations dismissing certain parties and narrowing the issues to be addressed, the sole remaining question developed at hearing was whether S.G. Farms has standing in this action. *See* ECF Nos. 90, 91. On February 22, 2019, as permitted by the court, defendants and FSO plaintiffs each filed post-hearing supplemental briefs. Defs.' Suppl. Br., ECF No. 94; FSO Suppl. Br., ECF No. 95.

The court resolves the question of S.G. Farms' standing here, adversely to S.G. Farms as explained below.

## II. LEGAL STANDARD

Although defendants' motion to dismiss does not explicitly challenge standing under Federal Rule of Civil Procedure 12(b)(1), a jurisdictional challenge is, nonetheless, appropriately framed under that provision. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Given the developed record on the matter of standing, including multiple supplemental filings and an evidentiary hearing, the court considers defendants' standing challenge under the rubric of Rule 12(b)(1). *See Gemtel Corp. v. Cmty. Redevelopment Agency of City of Los Angeles*, 23 F.3d 1542, 1544 n.1 (9th Cir. 1994) (construing district court's dismissal under Rule 12(b)(6) as one under Rule 12(b)(1) because it was "clear from the district court's rationale that it was dismissing for lack of jurisdiction.").

The U.S. Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). "Standing to sue is doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Lujan*, 504 U.S. at 560 ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.").

A plaintiff possesses Article III standing only if he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560). To establish an injury in fact, the plaintiff must show the defendant infringed on the plaintiff's legally protected interest in a "concrete and particularized" manner that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (citing Black's Law Dictionary 479 (9th ed. 2009)).

Lack of standing is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)." *White*, 227 F.3d at 1242. "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *Id.* "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* A "district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). In a factual attack, however, the court may review evidence outside the pleadings to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by

presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing the elements to satisfy Article III standing. *See Spokeo*, 136 S. Ct. at 1547. "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

## III. DISCUSSION

Defendants' motion to dismiss is premised on three contentions: (1) plaintiff S.G. Farms lacks standing to sue, (2) the second amended complaint fails to satisfy Rule 8's well-pled complaint standard, and (3) individual defendants are entitled to absolute or qualified immunity. *See generally* Mot. Given the procedural developments in this case, as explained below, the court addresses only the issue of standing here.

### A. S.G. Farms' Standing to Sue

As defendants appropriately frame it, "The only question remaining [as to standing] . . . is whether or not Plaintiff S.G. Farms was a vendor that sold seeds and was paid for them or was it a partner with an ongoing financial interest in the crop." Defs.' Suppl. Br. at 2.

In opposition to defendants' motion to dismiss, S.G. Farms submitted the declaration of George Bianchini, an S.G. Farms proprietor and CEO of its parent company M.C. Farmaceutical, Inc. Bianchini Decl. ¶ 1, ECF No. 68-3. Bianchini states that in early 2016, Chief Bills contacted S.G. Farms to purchase seed for an industrial hemp grow. *Id.* ¶ 4. Thereafter, having been "impressed with S.G. Farms' research, accomplishment, and knowledge surrounding cannabis," Chief Bills asked S.G. Farms to assist in the grow. *Id.* He further states that S.G. Farms provided advice and consultation services regarding the legality of the grow. *Id.* ¶ 5.

The terms of S.G. Farms' agreement with Chief Bills were that S.G. Farms would "basically oversee the grow, and ensure that it was as healthy as possible," in exchange for "10–15% of [Chief Bills's] (and his tribe's) share of the crops." *Id.* ¶ 8. To satisfy his obligations,

Bianchini spent "hundreds of hours, typically by [him]self or with one of [S.G. Farms'] workers, making sure everything stayed in proper shape." *Id.* S.G. Farms relied on this 10 to 15 percent interest as an "important part of [its] revenue model" because it intended to rejuvenate its seed supply with its share of the crop. *Id.* ¶ 10. Additionally, Bianchini's "estimate of the value of the CBD . . . would have provided S.G. Farms with the financial ability to continue its agricultural research for at least another three years." *Id.*

Bianchini also attaches to his declaration emails "showing [he] was involved with the grow." *Id.* ¶ 11. One such email exchange with Chief Bills states, "I was out at the farm today and took some photos. . . . I also took a bud for testing. I will send it to you next week. Anyway the farm looks great." *Id.*

At the January 2019 evidentiary hearing, Bianchini testified the S.G. Farms agreement with Chief Bills was not in writing, Jan. 7, 2019 Tr. 89:14–18, ECF No. 93, and he was not a signatory to either of the Master Facilitator Agreements, *id.* 91:23–92:15. Additionally, other than documents in the form of receipts for payment for the seeds and clones, his agreement with Chief Bills was entirely oral. *Id.* 89:19–24. Bianchini testified that oral agreements are industry standard, their agreement did not contemplate services beyond this most recent grow season and the value rendered to S.G. Farms for the seeds and clones was $15,500. *Id.* 90:2–17. He stated that one of the cashier's checks used to pay the $15,500 fee contained the notation "consulting fee" in the margin. *Id.* 109:13–20. He also testified he did not document the manner or hours he worked at the grow site, *id.* 90:25–91:12, but Chief Bills and Glen Burgin did witness him performing work on the property on several occasions, *id.* 81:5–15; Jan. 8 Tr. 137:7–15, ECF No. 93-1

Bianchini testified he retained emails documenting his agreement with Chief Bills; however, he did not produce those emails during the evidentiary hearing. *See* Jan. 7, 2019 Tr. 93:12–25; Jan. 8, 2019 Tr. 138:23–139:3. Finally, Bianchini testified he attended a conference call with other parties to the grow operation in which the nature of his agreement was discussed, but Chief Bills was not present during the call. Jan. 7, 2019 Tr. 94:3–17, 123:2–19; Jan. 8, 2019 Tr. 143:18–144:7.

In their post-evidentiary hearing briefs, both defendants and FSO plaintiffs contend Bianchini's testimony and lack of evidentiary support, taken together, do not establish S.G. Farms' interest in the crop, and thus expose S.G. Farms' lack of standing. *See* Defs.' Suppl. Br. at 5; FSO Suppl. Br. at 3–4.

The critical question here is whether S.G. Farms presents sufficient evidence demonstrating its injury would be redressed by a favorable decision from this court. "To establish redressability, a plaintiff must show that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (quoting *Lujan*, 504 U.S. at 561). "If . . . a favorable judicial decision would not require the defendant to redress the plaintiff's claimed injury, the plaintiff cannot demonstrate redressability[.]" *Id.* (citation omitted). Here, S.G. Farms' stated interest in the crop is purely contractual, *see* Bianchini Decl. ¶ 8; thus, to establish standing, S.G. Farms must show defendants infringed upon the benefit it anticipated from an enforceable contract.

The court finds S.G. Farms has not shown it had or has an enforceable interest in any portion of the crop. Although this matter is predicated on federal question jurisdiction, contract formation between private parties is inherently a matter of state law. *See Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 126 (2d Cir. 1999) (describing limited circumstances in which federal common law applies, otherwise state law governs); *cf. Ward v. Goossen*, 71 F. Supp. 3d 1010, 1014 (N.D. Cal. 2014) ("In order to decide whether parties agreed to arbitrate a particular set of disputes, courts apply state-law principles governing contract formation." (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Because the purported contract between S.G. Farms and Chief Bills involved California parties[7] and tangible goods produced in California, California contract law applies.

California Commercial Code section 2102 governs "transactions in goods." Goods are generally defined as "all things . . . which are movable at the time of identification to the

---

[7] The second amended complaint lists S.G. Farms as a California organization headquartered in Marin County and lists Chief Bills as residing in San Joaquin County, California. SAC ¶¶ 7–8.

contract for sale . . . ." Cal. Com. Code § 2105. Goods also can include "growing crops . . . attached to realty as described in the section . . . 2107[.]" *Id.* Section 2107(2) provides that "[a] contract for the sale apart from the land of growing crops or other things attached to realty and capable of severance without material harm thereto . . . is a contract for the sale of goods within this division . . . ." Cal. Com. Code § 2107(2). The transaction here involves the exchange of goods such that the California Commercial Code applies; as Bianchini testified, in exchange for his services, which included overseeing the grow, he would receive 10 to 15 percent of Chief Bills' portion of the crop. Bianchini Decl. ¶ 8.

Because the California Commercial Code applies, the transaction here must meet the threshold requirements of section 2201. Section 2201(1) provides that a contract for the sale of goods of $500 or more "is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." Cal. Com. Code § 2201(1). Bianchini testified his expected return from the 10 to 15 percent crop share would be at least "enough to cover [his] costs[,] which were probably limited to about 15 or 20 thousand out-of-pocket as [he] covered all the labor for when [he] brought [his] crew in." Jan. 7, 2019 Tr. 94:8–17. Bianchini also testified the agreement he made with Chief Bills was not memorialized in a writing. *Id.* 89:19–24. Therefore, because the purported agreement here involves a transaction greater than $500 and there is no writing documenting the agreement, S.G. Farms' purported contractual interest in the grow is barred by Commercial Code section 2201, unless an exception applies.

One possible exception under section 2201 is contained in a subsection of that section, providing that an unenforceable contract under subsection (1) is nonetheless enforceable "[i]f the party against whom enforcement is sought admits in his or her pleading, testimony, or otherwise in court that a contract for sale was made . . . ." Cal. Com. Code § 2201 (3)(b). Chief Bills's testimony forecloses the availability of this exception. During the evidentiary hearing, when asked about the involvement of Bianchini and S.G. Farms in the grow, Chief Bills said:

> So I called up George one day, and it so happened that he had plants. And so I told George, I go, well, we're ready, trying to get our ground prepped, ready to grow hemp. And then I said, well, we're trying to

> figure out the seed issue. And he goes, well, I do have plants, and it's going to be, you know, several weeks to a month to formulate those plants that he had. They were going to be going to the Pahrump grow with Duff's son Jason. But there was some controversy working between those two. So it was like first come, first serve, who has the money to produce them. We came up with the money, and that's how we started out.

Jan. 8 Tr. 214:13–215:4.

Additionally, when describing the nature of his arrangement with S.G. Farms, Chief Bills testified that "[Bianchini] supplied what we needed and he got paid. So whenever he brought product there, I made sure that I was there so I could give him his check so he has no out of pocket." *Id.* 227:4–8. Chief Bills also testified he did not make the "consulting fee" notation on one of the cashier's checks for seed payment because such a notation would have been in computerized type format, as the bank customarily converts handwritten memo notes to computer-generated type when issuing cashier's checks. *Id.* 227:16–23. Finally, although Chief Bills's declaration does speak of a general partnership with S.G. Farms, it makes no reference to a written agreement to provide consultation services in exchange for a 10 to 15 percent stake in his share of the crop. *See* Bills Decl. ¶¶ 14, 15, 22. Given Bills's testimony, which was not rebutted, it is clear the exception under section 2201(3)(b) does not apply.

It is S.G. Farms' burden to establish its standing, *see WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015), a burden it has not met. Despite Bianchini's testimony, S.G. Farms produces no evidence of a formal written agreement for a 10–15 percent share of Chief Bills's crop. The emails attached to Bianchini's declaration are not proof of such an agreement, nor is the "consulting fee" notation appearing on one of the cashier's checks remitted by Chief Bills because, as Bianchini's testified, those checks were for the $15,500 worth of seeds and clones Chief Bills purchased for the grow. Moreover, any purported conference call in which S.G. Farms' role was modified is inconsequential because Chief Bills was not a party to the call.

Finally, despite being granted the opportunity to submit supplemental briefing after the evidentiary hearing, including the opportunity to reply, ECF No. 91, S.G. Farms did neither. As a result, S.G. Farms made no formal objection to defendants' or FSO plaintiffs'

supplemental briefs contending S.G. Farms lacks standing in this matter. Defs.' Suppl. Br. at 5; FSO Suppl. Br. at 3–4.

In sum, S.G. Farms has not established standing in this matter by showing an enforceable contract redressable by a favorable decision from this court. Given that the complaint has been amended twice before, and S.G. Farms has been given a full opportunity to establish standing through briefing and the presentation of evidence at the evidentiary hearing, the court finds further amendment would be futile. *See Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) ("Futility alone can justify a court's refusal to grant leave to amend."). Accordingly, S.G. Farms is dismissed from this action with prejudice.

B. Leave to Amend as to Remaining Plaintiffs

As noted above, counsel Ronda Baldwin-Kennedy substituted in as counsel of record for the remaining plaintiffs, the FSO plaintiffs, after the second amended complaint had been filed. *See* ECF Nos. 46, 48. Since that time, the FSO plaintiffs have consistently sought leave to amend to cure shortcomings they identify in the complaint. *See* April 20, 2018 Tr. 7:25–8:2, 11:20–12:1, ECF No. 66; FSO Suppl. Br. at 2.

Under the circumstances, the FSO plaintiffs will be given the opportunity one more time to amend the complaint.

IV. CONCLUSION

Defendants' motion to dismiss, ECF No. 37, is GRANTED to the extent that S.G. Farms does not have standing to pursue this matter. S.G. Farms is dismissed with prejudice from this action. The remaining plaintiffs are granted one final opportunity to amend the complaint, with an amended complaint to be filed within twenty-one (21) days of the filed date of this order. The balance of defendants' motion to dismiss is DENIED without prejudice, given plaintiffs' opportunity to amend.

IT IS SO ORDERED.

DATED: July 6, 2020.

CHIEF UNITED STATES DISTRICT JUDGE