1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Free Spirit Organics, NAC, et al.,              No. 2:17-CV-02271-KJM-JDP

12                 Plaintiffs,                        ORDER

13        v.

14   San Joaquin County Board of Supervisors,
     et al.,
15
16                 Defendants.

17        Defendants move to dismiss plaintiffs' third amended complaint.  For the reasons below,

18   the court **grants the motion in part**.  The claims apart from the Fourth Amendment challenge are

19   dismissed without leave to amend

20   I.    **BACKGROUND**

21        The Agricultural Act of 2014 (referred to in the briefing as the U.S. Farm Bill) provides

22   that "[n]otwithstanding the Controlled Substances Act . . . or any other Federal law, an institution

23   of higher education . . . may grow or cultivate industrial hemp[,] if -- [it is grown] for purposes of

24   research conducted under an agricultural pilot program or other agricultural or academic

25   research."  7 U.S.C. § 5940(b)(1).  The California Industrial Hemp Farming Act (Hemp Act)

26   permits the cultivation of hemp as "regulated by the Department of Food and Agriculture."  Cal.

27   Health & Safety Code § 11018.5(b).  The Agricultural Act and Hemp Act define "industrial

                                            1

hemp" in a consistent manner.  *See* 7 U.S.C. § 5940(b)(2);[1] Cal. Health & Safety Code § 11018.5(a).[2]  The Hemp Act permits cultivation by an established agricultural research institution.  Cal. Food & Ag. § 81000(a)(5).[3]  Defendants include the San Joaquin County Board of Supervisors and the individual board members: Miguel Villapudua, Katherine Miller, Tom Patti, Bob Elliott, and Chuck Winn.  Third Am. Compl. (TAC) ¶ 14, ECF No. 100.  Additional defendants include the Sheriff's department and Erin Hiroko Sakata, an attorney and employee of County of San Joaquin, Office of County Counsel.  TAC ¶¶ 15–16.   Plaintiffs allege they are organizations that are permitted to grow hemp in California.  TAC ¶¶ 10–13.

In June 2017, plaintiffs began growing hemp, with the approval of the San Joaquin County Agricultural Commission.  *Id*. ¶ 33.  The following month, plaintiffs tested the hemp to ensure it fell within the appropriate THC limit to be considered industrial hemp.  *Id*. ¶¶ 34 & 43.  Through August and early September plaintiffs began corresponding with San Joaquin County representatives, including County Counsel Erin Hiroko Sakata about whether the grow was prohibited by county law.  *Id*. ¶¶ 36–38.

On September 26, 2017, the San Joaquin County Board of Supervisors passed Ordinance 4497, an emergency ordinance imposing an "interim moratorium" during which "no person or entity shall grow industrial hemp for any purposes within the unincorporated areas of San Joaquin County."  San Joaquin County, Ordinance 4497 § 7 (2017), ECF No. 101-2.  Sakata informed the plaintiffs the ordinance was effective immediately and that "[e]ach day that [the] illicit grow

---

[1] "The term 'industrial hemp' means the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."  7 U.S.C. § 5940(b)(2).

[2] "'Industrial hemp' [] means an agricultural product, whether growing or not, that is limited to types of the plant Cannabis sativa L. and any part of that plant, . . . with a delta-9 tetrahydrocannabinol concentration of no more than 0.3 percent on a dry weight basis."  Cal. Health & Safety Code § 11018.5(a).

[3] An established agricultural research institution is "(A) A public or private institution or organization that maintains land or facilities for agricultural research, including colleges, universities, agricultural research centers, and conservation research centers" or "(B) An institution of higher education, as defined in Section 101 of the federal Higher Education Act of 1965 (20 U.S.C. Sec. 1001), that grows, cultivates, or manufactures industrial hemp for purposes of research conducted under an agricultural pilot program or other agricultural or academic research."  Cal. Food & Agric. Code § 81000 (5) (A)–(B).

1   remains constitutes a separate offense." TAC ¶ 42 (quoting Ex. C).[4]  Plaintiffs "requested a

2   hearing to be heard on October 24, 2017," but the County denied the request, putting "plaintiffs

3   . . . on the agenda for the next Board meeting on November 7, 2017." *Id.* ¶¶ 43–44.  On

4   October 9, 2017, the Sheriff obtained a search warrant.  Search Warrant at 1, ECF No. 65; TAC

5   ¶ 45.  The Sheriff entered plaintiffs' property and seized the hemp crop.  TAC ¶ 45.

6           In resolving the last motion to dismiss and granting leave to amend, ECF No. 37, the court

7   explained this would be the "final opportunity to amend the complaint."  Prev. Order (July 7,

8   2020) at 13, ECF No. 99.

9           Plaintiffs allege Ordinance 4479 is: preempted by federal and state law (claim 1);

10  unconstitutionally vague (claim 2); and an unlawful "bill of attainder/ex post facto" law (claim 3).

11  *Id.* ¶¶ 53–100.  Additionally, the plaintiffs claim the defendants denied plaintiffs

12  "substantive/procedural due process" in violation of the Fourteenth Amendment (claim 4);

13  committed an unlawful seizure in violation of the Fourth Amendment (claim 5); and violated the

14  plaintiffs' Equal Protection rights under the Fourteenth Amendment (claim 9).  *Id.* ¶¶ 101-16, at

15  24–27, 103-09, at 30–32.[5]  The plaintiffs also allege deprivation of their rights under 42 U.S.C.

16  §1983 (claim 7); and violations of the Brown Act under California Government Code section

17  54950 *et seq*. (claim 8).  *Id.* ¶¶ 84–102, at 28–30.  Finally, plaintiffs seek declaratory judgment

18  (claim 6).  *Id.* ¶¶ 117–22.

19          Defendants move to dismiss.  Mot., ECF No. 101.  The motion is fully briefed.  Opp'n,

20  ECF No. 104; Reply, ECF No. 106.  The court submitted the matter on the papers.  Min. Order,

21  ECF No. 105.

22  /////

---

[4] As there are no exhibits attached to the Third Amended Complaint, the court presumes this citation refers to the September 28, 2017, letter signed by Sakata attached to the original complaint.  Compl. at 48–49, ECF No. 1.

[5] The paragraph numeration in the operative complaint restarts at claim seven resulting in two sets of ¶¶ 84–109.  When citing to these paragraphs the court also includes the corresponding page number of the complaint.

1    **II.    REQUEST FOR JUDICIAL NOTICE**

2           Defendants request the court take judicial notice of six documents: San Joaquin County

3    Ordinance 4497, Exhibit 1; San Joaquin County Board of Supervisors Agenda for September 26,

4    2017, Exhibit 2; Search Warrant and Affidavit, Exhibit 3; California Secretary of State business

5    search for American States University Corporation, Exhibit 4; Declaration of William Bills in

6    Support of Injunctive Relief, Exhibit 5; and Declaration of Glenn Burgin in Support of Injunctive

7    Relief, Exhibit 6.  Req. for Judicial Not. at 1, ECF No. 101-1.  "The court may judicially notice a

8    fact that is not subject to reasonable dispute because it . . . can be accurately and readily

9    determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

10   201(b).  A request for judicial notice must be granted "if a party requests it and the court is

11   supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  Plaintiffs do not oppose the

12   request or dispute the accuracy of the listed documents; in fact several were filed by the plaintiffs

13   themselves.  *See* ECF Nos. 1, 11 and 12.  The court takes judicial notice of all these documents.

14          The court's consideration of documents attached to a complaint or incorporated by

15   reference or matter of judicial notice will not convert the motion to dismiss into a motion for

16   summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of*

17   *Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News*

18   *Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond

19   pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6)

20   motion).

21   **III.    LEGAL STANDARD**

22          A party may move to dismiss for "failure to state a claim upon which relief can be

23   granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a

24   "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

25   *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).  The court

26   assumes all factual allegations are true and construes "them in the light most favorable to the

27   nonmoving party."  *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir.

28   /////

4

1   2019).  If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the

2   motion must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

3          A complaint need contain only a "short and plain statement of the claim showing that the

4   pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl.*

5   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than unadorned

6   accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S.

7   at 678.  In the same vein, conclusory or formulaic recitations elements do not alone suffice.  *Id*.

8   (quoting *Twombly*, 550 U.S. at 555).  This evaluation of plausibility is a context-specific task

9   drawing on "judicial experience and common sense."  *Id*. at 679.

10  **IV.   ANALYSIS[6]**

11         **A.     Absolute Legislative Immunity**

12         Defendants first move to dismiss the claims against the individual Board of Supervisors

13  members and Sakata, on the grounds of legislative immunity.  Mot. at 16.  Plaintiffs do not

14  dispute that absolute immunity would attach to the Board of Supervisors as legislators if they

15  /////

---

[6] Although the issue is not raised in the briefing, the court has considered mootness given its responsibility to consider its own jurisdiction.  According to the County's website, the County lifted the moratorium Ordinance 4497 imposed on October 25, 2019, months before the operative complaint was filed.  The court may take judicial notice of information made "publicly available by government entities . . ., and [when] neither party disputes the authenticity of the web sites or the accuracy of the information displayed." *See Can Hemp be legally grown In San Joaquin County?*, https://www.sjgov.org/docs/default-source/agricultural-commissioner-documents/documents-and-forms/pesticide-use-enforcement/education-presentations/hemp_ce_pp.pdf?sfvrsn=87e6c683_5 (accessed March 22, 2022); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).  In examining mootness in the context of repeal or expiration of . . . ordinances, the Ninth Circuit has "join[ed] the majority of . . . circuits in concluding that legislative actions should not be treated the same as voluntary cessation of challenged acts by a private party[.]" *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (citations omitted) (collecting cases).  "[The court] should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Id*.  "A live claim for nominal damages will prevent dismissal for mootness." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002).  Here, given that the plaintiffs allege each of their claims merits damages, in the form of compensation for their seized hemp, the court does not have a doubt about its jurisdiction based on mootness grounds and therefore considers the merits of each claim.

1    were performing a legitimate legislative act.  Opp'n at 11.  However, plaintiffs argue the adoption

2    of Ordinance 4497 was not legislative in nature.  *Id.*

3         Local government officials are entitled to "[a]bsolute legislative immunity [for] all actions

4    taken in the sphere of legitimate legislative activity."  *Bogan v. Scott-Harris*, 523 U.S. 44, 54

5    (1998) (citation and internal quotation marks omitted).  Immunity attaches regardless of "whether

6    those officials are members of the legislative or the executive branch," as long as their actions are

7    legislative.  *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 959 (9th Cir. 2010) (citing

8    *Bogan*, 523 U.S. at 55).  "Whether an act is legislative turns on the nature of the act, rather than

9    on the motive or intent of the official performing it."  *Bogan*, 523 U.S. at 54.  The Ninth Circuit

10   has identified four factors to consider when determining whether an act is legislative:

11   "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether

12   the act applies to a few individuals, or to the public at large; (3) whether the act is formally

13   legislative in character; and (4) whether it bears all the hallmarks of traditional legislation."

14   *Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003) (citation and internal marks

15   omitted).  The factors are not mutually exclusive.  *Id.*

16        Citing no authority, plaintiffs assert defendants' actions leading to the passing of

17   Ordinance 4497 were not legislative because, according to the plaintiffs, "[w]hether or not an act

18   is legislative in nature depends on whether or not the act is within the County's legitimate

19   legislative power, as authorized by the California Constitution."  Opp'n at 11.  Plaintiffs insist

20   "[defendants] enacted Ordinance 4497 in conflict with a general law – the Hemp Act," which

21   does, in their view, violate the California Constitution.  *Id.* at 12.  The court finds the plaintiffs'

22   logic flawed.  Under the plaintiffs' view a legislative body would not be performing a legislative

23   activity every time it passed "any statute or ordinance that was later struck down by a court."

24   Reply at 1.

25        An individual's "act[] of voting for the ordinance . . . [is], in form, quintessentially

26   legislative."  *Bogan*, 523 U.S. at 45.  Actions by non-legislators are subject to immunity if the

27   actions "were integral steps in the legislative process."  *Id.* (citing *Edwards v. United States*,

28   286 U.S. 482, 490 (1932)); *cf. Cmty. House, Inc.*, 623 F.3d at 964  (finding a mayor entitled to

1   legislative immunity given mayor's "intricate[] involve[ment] in the City's policy decision").

2   Here, Sakata, in her capacity as County Counsel, allegedly brought the issue of growing hemp "to

3   the Board and presented . . . evidence [in support of the Ordinance] at the . . . board meeting."

4   TAC ¶ 15.  Such actions were part of the legislative process.  Accordingly, Sakata and the

5   individual board members are entitled to immunity and the court dismisses them from this action

6   with prejudice.

7            **B.       Constitutional Claims Against Remaining Defendants**

8                 **1.       Preemption (claim 1)**

9            Plaintiffs first claim the Ordinance is preempted by federal and state law.  The Supremacy

10  Clause of the Constitution provides "Congress [with] the power to preempt state law."  *Arizona v.*

11  *United States*, 567 U.S. 387, 399 (2012); U.S. Const. art. VI, cl. 2.  Preemption takes one of three

12  forms: express, field, and conflict.  *See Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d

13  718, 725–24 (9th Cir. 2016).  Plaintiffs rely on conflict preemption.  *See* TAC ¶¶ 55–56, 65;

14  Opp'n at 16.  Such preemption occurs when state or local "laws . . . conflict with federal law,

15  such that compliance with both . . . is a physical impossibility, . . . [or] the challenged [] law

16  stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

17  Congress."  *Nat'l Fed'n of the Blind*, 813 F.3d at 724 (internal quotation marks and citation

18  omitted).

19         Plaintiffs argue federal conflict preemption exists because it is impossible to "abide by"

20  the Agricultural Act "without violating" the ordinance.  Opp'n at 16.  Defendants argue

21  "[p]laintiffs certainly could have abided by all applicable laws by not growing [hemp] at all."

22  Reply at 7.  The court does not find federal conflict preemption, as the Agricultural Act alone

23  does not legalize the growing of hemp at the state and local level.  In fact, it "expressly permits

24  the states to adopt rules regarding industrial hemp production that are 'more stringent' than the

25  federal rules."  *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 548 (7th Cir. 2020), *reh'g denied*

26  (Aug. 6, 2020).  The court does not find that a conflict exists between the Agricultural Act and the

27  Ordinance such that it is impossible to comply with both laws.  Accordingly, the court finds

28  plaintiffs have not adequately alleged conflict preemption.

1    Plaintiffs also argue state conflict preemption exists.  Under California law, "[a] county or

2    city may make and enforce within its limits all local, police, sanitary, and other ordinances and

3    regulations not in conflict with general laws."  Cal. Const., art. XI, § 7 (emphasis added);

4    *Sherwin–Williams Co. v. City of Los Angeles*, 4 Cal.4th 893, 897 (1993).  A local law is

5    preempted if it "duplicates, contradicts, or enters an area fully occupied by general law, either

6    expressly or by legislative implication."  *Id.* (citation omitted).  "[A] local ordinance is not

7    impliedly preempted by conflict with state law unless it mandate[s] what state law expressly

8    forbids, [or] forbid[s] what state law expressly mandates."  *City of Claremont v. Kruse*,

9    177 Cal. App. 4th 1153, 1176 (2009) (internal marks omitted).

10    Government Code section 65858 gives cities and counties the "authority to adopt an

11    interim ordinance prohibiting particular land uses."  *Id.* at 1178.  In *City of Claremont v. Kruse*,

12    the California Court of Appeal upheld the city's interim Ordinance imposing a moratorium on

13    medical marijuana dispensaries following state legalization.  *Id.*  In doing so the court focused on

14    the city's authority under section 65858 of the Government Code.  *Id.*  Defendants invoked the

15    same authority in passing the temporary prohibition on cultivating hemp.  *See* Ordinance 4497

16    § 2(K–L).  In *Kruse*, the "ordinance clearly state[ed] the City's intent, in light of the conflict of

17    [State and federal] laws" to "impose a temporary moratorium on the operation of [] dispensaries

18    until completion of its study" on the "potential impact" of the dispensaries."  *Kruse*, 177 Cal.

19    App. 4th at 1177.

20    Here, defendants imposed a temporary moratorium pending state clarification on the

21    relevant guidelines out of concern for the impact hemp cultivation could have on the county.  *See*

22    Ordinance 4497 § 2(K–L).  The court does not find the temporary moratorium conflicts with state

23    law because the interim Ordinance is within the scope of the County's authority under

24    Government Code section 65858.

25    **2.      Vagueness (claim 2)**

26    The plaintiffs claim the Ordinance is unconstitutionally vague.  The parties agree that an

27    ordinance "is unconstitutionally vague if it fails to provide a reasonable opportunity to know what

28    conduct is prohibited."  *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1019–20

(9th Cir. 2010) (explaining an ordinance can also be unconstitutionally vague if it "is so indefinite as to allow arbitrary and discriminatory enforcement"); Mot. at 19; Opp'n at 17.  Ordinance 4497 is clear in what conduct is prohibited: "no person or entity shall grow industrial hemp for any purposes within the unincorporated areas of San Joaquin County."  Ordinance 4497 § 7.  Plaintiffs' allegations that the Ordinance is vague are based primarily on two arguments.  First, plaintiffs claim the Ordinance is preempted.  TAC ¶ 85, at 22 ("Ordinance 4497 does not have any constitutional application, because it violates [ ] federal and California preemption").  Second, the plaintiffs take issue with the Ordinance's use of these terms: hemp, cannabis, and marijuana.  *Id.* ¶¶ 81–83.  While the Ordinance does contain each of these terms, the Ordinance does not conflate the terms or use them interchangeably, such that the law would confuse the reader.  *See* Ordinance 4497 § 2(H–I) (defining Hemp and Cannabis separately and noting "'cannabis' does not mean 'industrial hemp'"); *id*. § 2(J) ("hemp and cannabis are derivatives of the same plant" and "cannot be distinguished" without a chemical analysis test).  As discussed above, the Ordinance is not preempted, and the court does not find the Ordinance's use of hemp, cannabis, and marijuana is such that it unravels the definitive nature of the text or could result in arbitrary enforcement.  Plaintiffs fail to state a claim for unconstitutional vagueness.

### 3.      Bill of Attainder (claim 3)

Plaintiffs assert the ordinance is a bill of attainder.  The parties agree "the 'key features of a bill of attainder' are that the challenged law 'legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'"  Mot. at 20 (quoting *Nixon v. Adm'r of Gen. Servs*., 433 U.S. 425, 468 (1977)); Opp'n at 18.  "'Forbidden legislative punishment is not involved merely because the Act imposes burdensome consequences . . . [the court] must inquire' whether the [legislative body] 'inflict[ed] punishment[.]'"  *Fresno Rifle & Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 727 (9th Cir. 1992) (quoting *Nixon*, 433 U.S. at 472).  The court considers: (1) whether the ordinance "falls within the historical meaning of legislative punishment"; (2) whether the ordinance, "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes"; and (3) "whether the legislative record evinces a[n] . . . intent to punish."

1    *Id.* at 728 (citation omitted).  "Traditional punishments include 'imprisonment,' 'banishment,'

2    'punitive confiscation of property,' and prohibition of 'designated individuals or groups from

3    participation in specified employments or vocations.'"  *Id.* (quoting *Nixon*, 433 U.S. at 474).

4              The plaintiffs assert that "the offending ordinance prevents a defined category of persons–

5    hemp cultivators–from practicing their professions."  TAC ¶ 94, at 23.  Additionally, plaintiffs

6    claim they were specifically targeted, suggesting such an inference is supported by the fact that

7    "[a]t least 20% of the meeting during which [Ordinance 4497] was passed" involved discussions

8    of plaintiffs' grow as an example of the problem that needed addressing.  *Id.* ¶ 95, at 23.  But

9    "[a]n otherwise valid law is not transformed into a bill of attainder merely because it regulates

10   conduct on the part of designated individuals or classes of individuals."  *Fresno Rifle & Pistol*

11   *Club, Inc.*, 965 F.2d at 727.  Ordinance 4497 has a stated non-punitive purpose: "protecting the

12   public health, safety, and welfare of [county] residents."  Ordinance 4497 § 2(BB).  Plaintiffs

13   claim the Ordinance punished them because they "were not afforded the protections of a judicial

14   trial prior to their hemp crop being seized," Opp'n at 18, but the Ordinance did not dictate that

15   plaintiffs' hemp be immediately seized.  Rather, it made continued cultivation impermissible in

16   the county and authorities later seized the hemp under a search warrant that had been approved by

17   a judge.  *See* Search Warrant at 16, ECF No. 101-3; *cf. Cummings v. Missouri*, 71 U.S. 277, 297

18   (1866) ("If any means be left by which the defendant can escape the punishment prescribed in the

19   act, the act cannot be a bill of attainder; for a bill of attainder assumes the guilt and punishes the

20   offender whatever he may do to escape.").  That some defendants mentioned the plaintiffs' grow

21   when debating Ordinance 4497 and its impact on plaintiffs' operation does not render the

22   ordinance a bill of attainder.  *United States v. Munsterman*, 177 F.3d 1139, 1141 (9th Cir. 1999)

23   ("[I]t does not follow that laws that impose disabilities on some persons or groups are necessarily

24   bills of attainder").  The court finds the plaintiffs do not state a plausible claim for bill of

25   attainder.

26              **4.      Ex Post Facto (claim 3)**

27              Plaintiffs also claim the Ordinance is an ex post facto law.  The Supreme Court "has long

28   [] recognized . . . that the constitutional prohibition on ex post facto laws applies only to penal

1    [laws.]"  *Collins v. Youngblood*, 497 U.S. 37, 41 (1990).  A violation of the ex post facto clause

2    occurs only when 1) the law is "retrospective, that is, it must apply to events occurring before its

3    enactment"; and 2) the law "disadvantage[s] the offender affected by it."  *United States v. Lyndell*

4    *N.*, 124 F.3d 1170, 1172 (9th Cir. 1997) (citations omitted).

5          Plaintiffs claim the Ordinance is an ex post facto law because "[p]laintiffs' hemp

6    cultivation and growing operation was already underway at the time of the enactment of

7    Ordinance 4497."  TAC ¶ 98, at 24.  However, the ordinance is not retroactive.  The statute

8    prohibits cultivation "[d]uring the term of this interim moratorium. . . ."  Ordinance 4497 § 7.

9    Although the plaintiffs were growing hemp before it was passed, the Ordinance does not punish

10   plaintiffs for starting the grow; rather it punishes the continued growing of the hemp crop during

11   the moratorium.  *Cf. Chicago & A.R. Co. v. Tranbarger*, 238 U.S. 67, 73 (1915) (finding change

12   in law requiring construction to existing railroads to add roadbed openings was not ex post facto

13   law because "plaintiff in error [wa]s subjected to a penalty not because of the manner in which it

14   originally constructed its railroad embankment, . . . but because . . . it maintained the embankment

15   in a manner prohibited by [the] act" after it was passed).  Here plaintiffs fail to state a claim for an

16   ex post facto law.

17          **5.**      **Due Process (claim 4)**

18                  **a)**      **Substantive due process**

19          The plaintiffs claim defendants violated their substantive due process rights.  The

20   Fourteenth Amendment includes "a substantive component that protects certain individual

21   liberties from state interference[.]"  *Mullins v. Oregon*, 57 F.3d 789, 793 (9th Cir. 1995).

22   "Substantive due process has been . . . largely confined to protecting fundamental liberty

23   interests, such as marriage, procreation, contraception, family relationships, child rearing,

24   education and a person's bodily integrity, which are 'deeply rooted in this Nation's history and

25   tradition.'"  *Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018) (quoting *Moore v. East*

26   *Cleveland*, 431 U.S. 494, 503 (1977)).  Otherwise, to establish a violation of substantive due

27   process, a plaintiff must prove that the government's action was clearly arbitrary and

28   unreasonable.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).  "[O]nly egregious

official conduct can be said to be 'arbitrary in the constitutional sense': it must amount to an 'abuse of power' lacking 'any reasonable justification in the service of a legitimate government objective.'" *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008). Egregious conduct is "conduct intended to injure in some way [that is] unjustifiable by any government interest." *Lewis*, 523 U.S. at 849.

Plaintiffs do not allege defendants have infringed on the plaintiffs' fundamental right, rather they allege the defendants' process of enacting the ordinance and removing the hemp was procedural deficient. Specifically, the plaintiffs allege the defendants acted on alleged emergency basis, . . . fail[ed] to notify anyone opposed to the offending ordinance before it was passed, . . . inform[ed] those in favor of it[,] . . and demanded removal of crops." TAC ¶¶ 105, at 25. Nor are the factual allegations sufficient to plead the defendants' conduct was arbitrary. Plaintiffs do not plausibly plead a substantive due process claim.

### b) Procedural due process

The plaintiffs also claim they were denied procedural due process. "A procedural due process claim requires state action and '(1) a protectable liberty or property interest . . . and (2) a denial of adequate procedural protections.'" Mot. at 21 (citing *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005)); Opp'n at 19 (same). At issue here are property interests, which are created by state law, but not every state statutory right thereby becomes a constitutional entitlement. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). "[F]ederal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *San Bernardino Physicians' Servs. Med. Grp. v. Cnty. of San Bernardino*, 825 F.2d 1404, 1408–09 (9th Cir. 1987). "[B]ecause due process is a flexible concept, [p]recisely what procedures the Due Process Clause requires in any given case is a function of context." *Franceschi*, 887 F.3d at 935 (citation and internal quotation marks omitted; second bracket in original). "[W]hen the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1061 (9th Cir. 2012) (citation and marks omitted); *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261 (9th Cir. 1994)

1   ("governmental decisions which affect large areas and are not directed at one or a few individuals

2   do not give rise to the constitutional procedural due process requirements of individual notice and

3   hearing; general notice as provided by law is sufficient"), *as amended on denial of reh'g* (Feb. 9,

4   1995).

5        The County's "enactment of the [ ] moratorium ordinance[] [is a] lawful legislative act[],

6   because the ordinance[] applied generally. . . ." *Samson*, 683 F.3d at 1061.  The County passed

7   Ordinance 4497 as an emergency ordinance, TAC ¶ 16; Ordinance 4497 § 1, and plaintiffs do not

8   allege the County departed from its normal procedure for enacting an emergency moratorium.

9   *See* September 26, 2017, Board Agenda at 4, ECF No. 101-3; Cal. Gov't Code § 65858(a); *see*

10  *also Samson*, 683 F.3d at 1060 (noting plaintiffs' rights were protected because the City "hewed

11  to its ordinary protocols when it passed the moratorium ordinances").  Plaintiffs do not plausibly

12  plead a procedural due process claim.

13              **6.       Seizure (claim 5)**

14       Plaintiffs claim the defendants violated plaintiffs' Fourth Amendment rights against

15  unreasonable seizure.  The Fourth Amendment protects against unreasonable searches and

16  seizures.  U.S. Const. amend. IV.  "A seizure is a meaningful interference with an individual's

17  possessory interests in [his] property." *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017)

18  (internal quotation marks and citation omitted)).  "[A] seizure lawful at its inception can

19  nevertheless violate the Fourth Amendment because its manner of execution unreasonably

20  infringes possessory interests." *United States v. Jacobsen*, 466 U.S. 109, 124 (1984).  Here,

21  plaintiffs argue there were inadequacies with the warrant and the officer's process for obtaining it.

22  TAC ¶ 111.  Furthermore, plaintiffs allege the "officers knew, or reasonably should have known

23  that Ordinance 4497 was unconstitutional," Opp'n at 26; TAC ¶ 114, and are not entitled to

24  qualified immunity because they "intentionally misled" the magistrate judge to issue the warrant,

25  *id*.

26              **a)       The Warrant**

27       A valid warrant "must be supported by an affidavit establishing probable cause." *United*

28  *States v. Stanert*, 762 F.2d 775, 778 (9th Cir.), *amended*, 769 F.2d 1410 (9th Cir. 1985).  "In

                                          13

1  reviewing the validity of a search warrant, a court is limited to the information and circumstances

2  contained within the four corners of the underlying affidavit." *Id.* (citation omitted).  "[T]he duty

3  of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . .

4  conclud[ing]' that probable cause existed." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238

5  (1983)).

6        Plaintiffs allege "inaccurate facts sworn out by Agent Michael Eastin."  TAC ¶ 111.

7  According to plaintiffs "[t]he warrant further does not identify what agency employs Eastin . . .

8  indicate Eastin's expertise, experience, familiarity with the subject matter of the warrant, or the

9  basis on which he believed the property authorized to be searched for including

10  'Marijuana/Hemp' was illegal."  *Id.*  Also, plaintiffs claim the affidavit "does not indicate that

11  Eastin had visited the subject grow on at least two prior occasions."  *Id.*  Plaintiffs'

12  characterizations are incorrect.  Under the Statement of Probable Cause, Eastin declares he is "a

13  duly appointed Deputy Sheriff for the San Joaquin County Sheriff's Office . . . assigned to the

14  San Joaquin County Metropolitan Narcotics Task Force."  Search Warrant at 8.[7]  The warrant

15  application indicates Eastin suspected plaintiffs were growing marijuana or hemp against the

16  County Ordinance and out of compliance with State law.  *Id*. at 12–20.  It also details his prior

17  visits to the site and his discussions with caretakers of the grow and their ongoing research.  *Id.*

18  Plaintiffs claim the "warrant does not indicate that any property may be seized."  TAC ¶ 111.  But

19  it clearly allows for the search and seizure "if found" of Marijuana/Hemp, packing paraphernalia

20  and certain pieces of personal property including that which "tend[s] to document sales of

21  Marijuana/Hemp."  Search Warrant at 6–8.  The plaintiffs also take issue with the terms

22  "marijuana" and "hemp" being used in conjunction in the warrant.  TAC 111.[8]  None of these

23  alleged deficiencies prohibit a finding of probable cause or otherwise undermine the validity of

---

[7]  When citing the warrant and related documents, the court uses the pagination automatically generated by the CM/ECF system.

[8]  Plaintiffs allege procedural deficiencies with the warrant's return and verification of the things seized and "many other deficiencies" not listed in the complaint.  TAC ¶ 111.  These allegations do not inform the court about any legal deficiencies with the warrant or generalized search.

1  the warrant.  *See Malley v. Briggs*, 475 U.S. 335, 344–45 (1986) ("Only where the warrant

2  application is so lacking in indicia of probable cause as to render official belief in its existence

3  unreasonable will the shield of immunity be lost.").  The warrant application established probable

4  cause for the search.

5                               **b)      Judicial Deception**

6          A person who knowingly or with reckless disregard for the truth includes materially false

7  statements or omits material facts in an affidavit submitted in support of a warrant application

8  may be liable under § 1983 for a Fourth Amendment violation.  *Butler v. Elle*, 281 F.3d 1014,

9  1024–26 (9th Cir. 2002).  To survive a motion to dismiss a "plaintiff must show that the

10  investigator made deliberately false statements or recklessly disregarded the truth in the affidavit

11  and that the falsifications were material to the finding of probable cause."  *Galbraith v. Cnty. of*

12  *Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (citation and internal marks omitted).  Facts

13  pled on "information and belief" are sufficient as long as the other *Iqbal–Twombly* requirements

14  are satisfied.  *See Hightower v. Tilton*, No. 08-1129, 2012 WL 1194720, at *3–4 (E.D.Cal. Apr.

15  10, 2012) (citing *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988)).

16          Under this claim the plaintiffs assert the same factual allegations addressed in the

17  preceding section and claim the "officers knew, or reasonably should have known that Ordinance

18  4497 was unconstitutional," Opp'n at 26; TAC ¶ 114.  This is insufficient to state a claim for

19  judicial deception.

20                       **c)      Scope of the Warrant and Qualified Immunity**

21          Finally with regards to the warrant, the operative complaint claims "[t]he warrant

22  prohibits night entry, yet at the time the Sheriff entered onto the subject grow, it was so dark that

23  lights had to be erected."  TAC ¶ 111.  A night search of the property was neither requested by

24  authorities nor approved of by the magistrate judge.  Search Warrant at 5, 7.  If a search

25  conducted based on a warrant exceeds the scope of that warrant, the search violates the Fourth

26  Amendment.  *Horton v. California*, 496 U.S. 128, 140 (1990); *cf. Welsh v. Wisconsin*, 466 U.S.

27  740, 754 (1984) (a night entry without obtaining a warrant to arrest was unconstitutional).  The

28  Ninth Circuit has previously found that a magistrate judge's neglecting to indicate whether she

authorized a nighttime search did not necessarily effect "a deprivation of [plaintiff's] constitutional rights" when the search was made at night. *Martinez v. Craven*, 429 F.2d 18, 20 (9th Cir. 1970). "Rather, the [c]ourt looks to the totality of the circumstances in order to determine whether a Fourth Amendment violation occurred." *Sibrian v. San Bernardino Cnty.*, No. 2:09-8014, 2011 WL 13142129, at *7 (C.D. Cal. July 18, 2011), *aff'd sub nom.*, 526 F. App'x 752 (9th Cir. 2013) (unpublished).

In *Sibrian*, the Ninth Circuit affirmed a finding that no constitutional violation occurred where "the affidavit presented to the magistrate judge specifically sought night service, the magistrate signed the warrant at around 9:34 pm, neither the 'yes' nor the 'no' box was checked next to the question 'Night Service Approved,'" and the search was executed at 11:00 p.m. *Id.*; *Hall v. Tudbury*, 35 F. App'x 428, 430 (9th Cir. 2002) (unpublished) (finding officers were entitled to qualified immunity based on their reasonable interpretation of warrant and lack of disputed factual issues). In contrast, in this case, Eastin did not request a night search. When signing the warrant at 10:00 p.m. on October 9, 2017, the night before the search, the magistrate clearly checked "No" in response to "Night Search Approved." Search Warrant at 7. The complaint and existing factual record do not illuminate what time the search began, and the parties' briefing does not address whether the officers would be entitled to qualified immunity based on the timing of the search. The court notes that the sheriff completed the search on October 10, 2017, TAC ¶ 25, and the sun set at about 4:48 p.m. in San Joaquin County that day, Sunrise-Sunset, San Joaquin County, CA.[9] The court finds at this stage on this record the plaintiffs state a claim for unlawful seizure on this point only.

### 7.    Equal Protection (claim 9)

Next, plaintiffs bring an equal protection claim. The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In *Village of Willowbrook v. Olech*, the Supreme Court

---

[9] https://sunrise-sunset.org/search?location=San%20Joaquin%20County%20&year=2017&month=11#calendar (accessed Mar. 23, 2022). The court takes judicial notice of this fact as it is not subject to reasonable dispute that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

1   recognized an "equal protection claim[ ] brought by a 'class of one.'"  528 U.S. 562, 564 (2000).

2   To bring a "class of one" equal protection claim a plaintiff must meet three elements: the

3   defendants "(1) intentionally (2) treated [plaintiffs] differently than other similarly situated [mine

4   operators], (3) without a rational basis."  *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1022

5   (9th Cir. 2011).  "[A]s to the different treatment element, a plaintiff must demonstrate that the

6   level of similarity between plaintiff and the persons with whom [plaintiff] compare[s] [herself]

7   [is] extremely high."  *Hamer v. El Dorado County*, No. 08-2669, 2011 WL 794895, at *12

8   (E.D.Cal. Mar. 1, 2011) (citation and internal quotation marks omitted).  The pleading

9   requirement for the basis of the treatment may be satisfied by "the pattern and nature of

10   defendants' alleged conduct," which can "demonstrate[e] the [defendants'] improper

11   discriminatory purpose."  *Geinosky v. City of Chicago*, 675 F.3d 743, 748 (7th Cir. 2012).

12       Plaintiffs allege defendants were possibly motivated by "racial animus towards plaintiffs"

13   and acted with malice in passing Ordinance 4497.  TAC ¶ 107, at 32.  The plaintiffs allege

14   "[d]efendants singled out plaintiffs, targeted them, as evidenced by the specific mention of

15   plaintiffs['] hemp operation at the meeting during which Ordinance 4497 was formulated."  *Id.*

16   ¶ 108, at 32.  But nowhere does the complaint allege plaintiffs were treated differently than other

17   similarly situated parties.  On its face the Ordinance prohibits growing hemp for any purpose by

18   any person.  There are no allegations that the defendants only enforced the Ordinance against

19   plaintiffs or treated any other group differently in any way.  Plaintiffs fail to plead an equal

20   protection violation.

21       **8.       Section 1983 (claim 7)**

22       Plaintiffs' seventh claim is brought under § 1983 and is asserted "against all *individual*

23   defendants."  TAC at 28 (emphasis added).  Defendants treat this as a claim of municipal liability

24   under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  Mot. at 24.  Plaintiffs

25   agree *Monell* applies.  Opp'n at 22.  A claim under § 1983 includes two elements: "(1) the

26   defendants acted under color of law, and (2) their conduct deprived [the plaintiff] of a

27   constitutional right."  *Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011) (alteration in original)

28   (citation omitted).  Municipal governments can be liable for "their own illegal acts" under § 1983

1   and *Monell*.  *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis omitted).  Ultimately,

2   to establish municipal liability under *Monell*, a plaintiff must prove: "(1) that [the plaintiff]

3   possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a

4   policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right;

5   and, (4) that the policy is the moving force behind the constitutional violation."  *Dougherty v.*

6   *City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted).  A few "isolated or sporadic

7   incidents" are not enough to prove a county has an unconstitutional custom or practice.  *Trevino*

8   *v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  A practice or custom must have "sufficient duration,

9   frequency and consistency" that it has "become a traditional method of carrying out policy."  *Id*.

10          Plaintiffs attempt to plead *Monell* liability by claiming "defendants . . . acted pursuant to a

11   . . . policy and custom of [the] San Joaquin County Board of Supervisors to ignore the mandates

12   of State and Federal law when necessary to draft an ex post facto law."  TAC ¶ 89, at 29.  The

13   only examples of this "custom" are the drafting, enactment, and enforcement of the ordinance at

14   issue here.  *See id*. ¶¶ 90–93, at 29 (claiming the defendants "ignored the definition of 'hemp' as

15   given in state and federal statutes, . . . impermissibly declared the statutory definition of

16   'Established Agricultural Research Institution' to be vague, . . . [and] enacted and enforced

17   Ordinance 4497 against [p]laintiffs, knowing that it was in conflict with state and federal law.").

18   Plaintiffs also "assume" defendants acted in accordance with this policy on three more occasions,

19   and thus adhered to a custom, by renewing Ordinance 4497 because the time allocated for the

20   temporary moratorium had long since passed by the time plaintiffs filed their opposition.  Opp'n

21   at 22.  This assumption may be incorrect as the County enacted regulations for permissible

22   cultivation of industrial hemp before the operative complaint was filed.  *See generally* Ordinance

23   4557; *see generally* TAC.  Even if plaintiffs are correct and defendants renewed Ordinance 4497

24   on multiple occasions, and this allegation was incorporated into the complaint, the court is not

25   persuaded that actions related to the enactment of a single ordinance amount to more than isolated

26   or sporadic incidents.  The court dismisses this claim.

27   /////

18

1              **9.      Brown Act (claim 8)**

2         Plaintiffs allege the Board of Supervisors violated the Brown Act, Cal. Gov't Code

3  § 54950 *et seq.*, by failing "to post a public notice of the meeting at which Ordinance 4497 was

4  discussed." TAC ¶ 99, at 29.  "[A]ny interested person may commence an action by mandamus

5  or injunction for the purpose of obtaining a judicial determination that an action taken by a

6  legislative body of a local agency in violation of [the Brown Act] is null and void."  Cal. Gov't

7  Code § 54960.1(a).  But a plaintiff must first "make a demand of the legislative body to cure or

8  correct the [alleged violation.]"  *Id.*(b).  Plaintiffs concede they have "not pled compliance with

9  the demand for cure requirements" but nonetheless insist this is "not fatal."  Opp'n at 22–23.

10  This argument ignores the voluminous case law indicating that to state a claim, "a complaint

11  based on [the Brown Act] must allege . . . that before commencing the action, plaintiff made a

12  timely demand of the legislative body to cure or correct the action alleged to have been taken in

13  violation of the enumerated statutes, and the legislative body did not cure or correct the

14  challenged action." *SPRAWLDEF v. City of Richmond*, No. 18-3918, 2020 WL 4734807, at *4

15  (N.D. Cal. Aug. 14, 2020) (quoting *Bell v. Vista Unified Sch. Dist.*, 82 Cal. App. 4th 672, 684–85

16  (2000)).

17         Plaintiffs now ask the court to stay the case pending compliance or dismiss this claim

18  without prejudice.  Opp'n at 23.  The time to make a compliant demand under the statute had long

19  since passed when the operative complaint was filed, and plaintiffs do not argue they could plead

20  additional facts to show compliance.  *See* Cal. Gov't Code § 54960.1(c)(1) (the demand to cure

21  must be made "within 90 days from the date the action was taken . . . ."); *Gifford v. Hornbrook*

22  *Fire Prot. Dist.*, No. 2:16-0596, 2021 WL 4168532, at *27 (E.D. Cal. Sept. 14, 2021)

23  (recommending Brown Act claim be dismissed because "[p]laintiff does not definitively allege

24  that he sent cure and correct letters in regard to any improper actions taken at [certain] meetings"

25  but granting leave to amend because plaintiff did allege one proper cure letter).  The court

26  dismisses this claim with prejudice.

27  /////

19

1          **10.     Declaratory Relief (claim 6)**

2          Plaintiffs request declaratory relief "as to each and every alleged constitutional violation

3   in th[e] Third Amended Complaint and that the warrant enforced by the 'County Sheriff' was

4   invalid and unenforceable on the basis that they [ ] are *void ab initio*." TAC ¶ 118.  As explained

5   above the court has dismissed every substantive claim related to the lawfulness of the Ordinance

6   and the procedure for obtaining the warrant.  The only claim that remains is the Fourth

7   Amendment claim related to the time the search was executed.  Thus, the court dismisses the

8   claim for declaratory relief, except as it relates to the narrowed Fourth Amendment claim.

9   **V.     AMENDMENT**

10          "Courts may decline to grant leave to amend only if there is strong evidence of '. . .

11  repeated failure to cure deficiencies by amendments previously allowed, . . . [or] futility of

12  amendment . . . .'" *See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109,

13  1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).  The court previously

14  informed plaintiffs they had "one final opportunity to amend the complaint."  Prev. Order at 13.

15  The court thus dismisses all of plaintiffs' claims, apart from the Fourth Amendment claim,

16  without leave to amend.

17  **VI.    CONCLUSION**

18          The court **grants the motion to dismiss (ECF No. 101) in part**.

19          The court finds Sakata and the individual board members are entitled to legislative

20  immunity and are therefore **dismissed with prejudice**.

21          The court dismisses **remaining claims against the County and sheriff without leave to**

22  **amend apart from the Fourth Amendment challenge based on the time of the search**.

23          IT IS SO ORDERED.

24  DATED:  March 24, 2022.

25                                                    _____

                                            CHIEF UNITED STATES DISTRICT JUDGE